

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-20-2006

# Hooven v. Exxon Mobil Corp

Precedential or Non-Precedential: Precedential

Docket No. 04-3773

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Hooven v. Exxon Mobil Corp" (2006). *2006 Decisions.* Paper 259.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/259

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 04-3773 and 05-1610
_____


Case No:  04-3773

JOE A. HOOVEN; MICHAEL AVERSANO;
AINARS BLUSS; T. B. BOTTOLFSON; D. R. CLARIZIO;
STAN CONLEY; EDMUND E. DAVIS, SR.;
PAUL E. DOXEY; JACK F. DUNLEAVY;
CHRISTOPHER G. GIBSON; ROGER A. HENDLER;
J. K. HOOVEN; ROMULUS VANCE HOUCK, III;
TODD HOWARD; D. HRINAK; J. D. HUMPHREYS;
WILLIAM J. HELFRICH; H. J. KLEIN; A. R. KLINE;
R. J. KOPCHA; FRANKLIN W. LEE; R. E. LITTLE;
JOANNE LIMA; J. LUTZ; E. T. McMURPHY;
S. A. MENDOLIA; STEVE MERCURIO;
CLARK D. MILLER; MICHAEL L. MILLMAN;
G. A. MILNE; DANIEL G. MOORE; B. L. MORGAN;
P. M. POROHNAVI; PATRICIA V. ROSE;
JEAN VALENZA-RUBINO; SHELLY C. SHARER;
JAMES R. SLUSHER; M. W. STUMP; D. M. SULLIVAN;
LINDA N. SUTPHIN; DARREL R. TAYLOR;
THOMAS P. THOMPSON; JOHN TROY;

*(continued)*

DONALD A. TWELE; CARROLL S. WAGNER;
LAURA WAKS; JOE D. WOODWARD;
JOHN H. WOOLFOLK; E. CHRISTINE COPLEY;
E. JACKSON; L. YOUNG; SUZANNE MICHAUD

v.

EXXON MOBIL CORPORATION;
MOBIL CORPORATION EMPLOYEE SEVERANCE
PLAN,

Appellants

_____

Case No: 05-1610

JOE A. HOOVEN; MICHAEL AVERSANO;
AINARS BLUSS; T. B. BOTTOLFSON; D. R. CLARIZIO;
STAN CONLEY; EDMUND E. DAVIS, SR;
PAUL E. DOXEY; JACK F. DUNLEAVY; CHRISTOPHER
G. GIBSON; ROGER A. HENDLER; J. K. HOOVEN;
ROMULUS VANCE HOUCK, III; TODD HOWARD;
D. HRINAK; J. D. HUMPHREYS; H. J. KLEIN;
A. R. KLINE; R. J. KOPCHA; FRANKLIN W. LEE;
R. E. LITTLE; JOANNE LIMA; J. LUTZ;
E. T. McMURPHY; S. A. MENDOLIA;

*(continued)*

2

STEVE MERCURIO; CLARK D. MILLER;
MICHAEL L. MILLMAN; G. A. MILNE;
DANIEL G. MOORE; B. L. MORGAN;
P. M. POROHNAVI; PATRICIA V. ROSE;
JEAN VALENZA-RUBINO; SHELLY C. SHARER;
JAMES R. SLUSHER; M. W. STUMP;
D. M. SULLIVAN; LINDA N. SUTPHIN;
DARREL R. TAYLOR; THOMAS P. THOMPSON;
JOHN TROY; DONALD A. TWELE;
CARROLL S. WAGNER; LAURA WAKS;
JOE D. WOODWARD; JOHN H. WOOLFOLK;
E. CHRISTINE COPLEY; E. JACKSON; L. YOUNG;
SUZANNE MICHAUD; WILLIAM J. HELFRICH

v.

EXXON MOBIL CORPORATION;
MOBIL CORPORATION EMPLOYEE SEVERANCE
PLAN,

Appellants

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 00-cv-05071)
District Judge: Honorable Cynthia M. Rufe

_____

3

Argued July 10, 2006

Before:  SLOVITER, McKEE AND RENDELL,
Circuit Judges

(Filed: October 20, 2006)

Mark S. Dichter [ARGUED]
Jeremy P. Blumenfeld
Morgan, Lewis & Bockius
1701 Market Street
Philadelphia, PA  19103

David M. Rivet
Exxon Mobil Corporation
800 Bell Street, Room 18060
Houston, TX  77002

Richard G. Rosenblatt
Morgan, Lewis & Bockius
502 Carnegie Center
Princeton, NJ  08540
*Counsel for Appellants*
    *Exxon Mobil Corporation;*
    *Mobil Corporation Employee Severance Plan*

John A. Guernsey [ARGUED]
Paul J. Greco
Colleen M. Johns
Frank M. Emmerich, Jr.
Conrad, O'Brien, Gellman & Rohn
1515 Market Street, 16th Floor
Philadelphia, PA   19102
*Counsel for Appellees in No. 04-3773*
   *Joe A. Hooven; Michael Aversano; Ainars Bluss;*
   *T. B. Bottolfson; D. R. Clarizio; Stan Conley;*
   *Edmund E. Davis, Sr.;  Paul E. Doxey; Jack F. Dunleavy;*
   *Christopher G. Gibson; Roger A. Hendler; J. K. Hooven;*
   *Romulus Vance Houck, III;    Todd Howard; D. Hrinak;*
   *J. D. Humphreys; William J. Helfrich;H. J. Klein; A.*
   *R. Kline; R. J. Kopcha; Franklin W. Lee; R. E. Little;*
   *Joanne Lima; J. Lutz; E. T. McMurphy; S. A. Mendolia;*
   *Steve Mercurio; Clark D. Miller; Michael L. Millman;*
   *G. A. Milne; Daniel G. Moore; B. L. Morgan;*
   *P.M.Porohnavi; Patricia V. Rose; Jean Valenza- Rubino;*
   *Shelly C. Sharer; James R.Slusher; M. W. Stump;*
   *D. M. Sullivan; Linda N. Sutphin; Darrel R. Taylor;*
   *Thomas P. Thompson; John Troy; Donald A. Twele;*
   *Carroll S. Wagner; Laura Waks; Joe D. Woodward;*
   *John H. Woolfolk; E. Christine Copley; E. Jackson;*
   *L.Young; Suzanne Michaud.*


*(continued)*

5

*- and -*

*Counsel for Appellees in No. 05-1610*
*Joe A. Hooven; Michael Aversano; Ainars Bluss;*
*T. B. Bottolfson; D. R. Clarizio; Stan Conley;*
*Edmund E. Davis, Sr;   Paul E. Doxey; Jack F. Dunleary;*
*Christopher G. Gibson; Roger A. Hendler; J. K. Hooven;*
*Romulus Vance Houck, III; Todd Howard; D. Hrinak;*
*J. D. Humphreys; H. J. Klein; A. R.Kline; R. J. Kopcha;*
*Franklin W. Lee; R. E. Little; Joanne Lima; J. Lutz;*
*E. T. McMurphy; S. A. Mendolia; Steve Mercuric;*
*Clark D. Miller; Michael L. Millman; G. A. Milne;*
*Daniel G. Moore; B. L. Morgan; P. M. Porohnavi;*
*Patricia V. Rose; Jean Valenza-Rubino;*
*Shelly C. Sharer; James R. Slusher; M. W. Stump;*
*D. M. Sullivan; Linda N. Sutphin; Darrel R. Taylor;*
*Thomas P. Thompson; John Troy; Donald A. Twele;*
*Carroll S. Wagner; Laura Waks; Joe D. Woodward;*
*John H. Woolfolk; E. Christine Copley; E. Jackson;*
*L. Young; Suzanne Michaud; William J. Helfrich.*

_____

OPINION OF THE COURT
_____

6

RENDELL, *Circuit Judge*.

This case arises out of a dispute over whether employees divested in connection with the merger between Mobil Corporation and Exxon Corporation are entitled to severance benefits. In preparation for the merger, Mobil implemented an Enhanced Change-in-Control Retention / Severance Plan (the "CIC Plan").

Plaintiffs Joe A. Hooven, et al., are former Mobil Corporation employees whose employment with the merged Exxon Mobil Corporation was terminated when the division for which they worked was divested to Tosco Corporation. Plaintiffs contend that they are entitled to benefits under the terms of a summary plan description (the "Initial SPD") that Mobil distributed to employees following the announcement of the merger. They sued Defendants Exxon Mobil Corporation and the Mobil Corporation Employee Severance Plan (together, "Exxon Mobil") under the civil enforcement provision of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132, asserting claims for breach of fiduciary duty, equitable estoppel, procedural and reporting violations and federal common law breach of contract.

After a bench trial, the District Court issued a memorandum opinion and order granting judgment in favor of Exxon Mobil on the fiduciary duty, equitable estoppel and procedural and reporting claims. However, the District Court

7

agreed with Plaintiffs that the Initial SPD established a unilateral contract that obligated Exxon Mobil to provide them with severance benefits when it terminated their employment following the merger. Accordingly, it entered judgment in favor of Plaintiffs on the breach of contract claim and ordered Exxon Mobil to provide Plaintiffs with severance benefits under the terms of the Initial SPD. Exxon Mobil appeals this portion of the District Court's order.

We disagree with the District Court's characterization of the Initial SPD as a unilateral contract the terms of which became fixed as the employees performed. As we will explain, the starting point for Plaintiffs' claim is ERISA, not the common law of contracts. Under this framework, Plaintiffs' rights to benefits under the Initial SPD never became due. Because the plan documents that were in effect when Plaintiffs' claim to benefits would have accrued clearly establish that they are ineligible for severance, we will reverse and remand with instructions for the District Court to enter judgment for Exxon Mobil.[1]

---

[1]Exxon Mobil also appeals the District Court's February 14, 2005 order awarding Plaintiffs attorneys' fees under the terms of the CIC Plan. *See Hooven v. Exxon Mobil Corp.*, No. Civ. A. 00-5071, 2005 WL 417416 (E.D. Pa. Feb. 14, 2005). Because we reverse the District Court's decision on the merits, we will also vacate the attorneys' fees order and need not address the merits of the fee dispute.

# I.

## A.    The CIC Plan and SPD

Exxon and Mobil began merger discussions in June of 1998.  In September 1998, in anticipation of a possible merger with Exxon, Mobil's Board of Directors revoked the company's existing severance plan and implemented the CIC Plan.  The CIC Plan provided that employees in salary groups 19 and below, together classified as "Tier 4" employees, were not eligible for severance benefits if their business unit or activity was divested after the merger and they were offered comparable employment by the acquiring entity.  Plaintiffs were all Tier 4 employees.  *Hooven v. Exxon Mobil Corp.*, No. 00-CV-5071, 2004 WL 724496, at *2 (E.D. Pa. Mar. 31, 2004).

After the Boards of Directors of Exxon and Mobil formally approved the merger, Mobil prepared and mailed the Initial SPD to its employees.  The Initial SPD did not allude to the specific non-eligibility of divested employees, or even mention divestiture.[2]  The District Court found that the Initial SPD "failed to advise Plaintiffs that they would be ineligible

---

[2]The parties argue as to how to characterize this mistake–as a mere "omission," or as a "misrepresentation" that conflicts with the language of the CIC Plan.  We need not resolve this disagreement in light of our reasoning along different lines.

for severance in the event of a divestiture." *Id.* at *8. However, the Initial SPD cautioned that it was merely "a summary of the Plan and does not replace the official Plan documents, which govern in all cases." *Id.* at *21. *See also Id.* ("If the Plan description in this handbook does not agree with the Plan text, the Plan text will govern."). It also stated that, although Mobil reserved the right to "modify, suspend, or terminate benefits at any time for any reason," the CIC Plan "may not be terminated or modified while a change of control is pending, or within: [s]ix months following a potential change in control, or [t]wo years following a change in control." *Id.* at *9.

**B.     The Merger and Divestiture**

On November 30, 1999, the Federal Trade Commission approved the Mobil / Exxon merger, subject to divestitures of various Mobil assets and other conditions. Exxon Mobil was created on December 1, 1999. Also on December 1, 1999, Mobil agreed to sell its Mid-Atlantic Marketing division, in which Plaintiffs worked, to Tosco Corporation. Tosco agreed to offer jobs with comparable or improved salaries and benefits to all of Mobil's Mid-Atlantic Marketing employees. *Id.* at *11.

Mobil announced the divestiture of its Mid-Atlantic Marketing division on December 2, 1999. At an employee meeting that day, Mobil management discussed the divestiture

10

and explained that all affected employees would be offered employment with Tosco. At the same time, management advised Tier 4 employees that they would not be entitled to severance benefits because they had been divested and would receive comparable employment offers. In subsequent meetings, Plaintiffs expressed surprise that they would not be offered severance benefits and complained that Mobil had changed the terms of the CIC Plan. Mobil management responded by distributing copies of relevant questions and answers from Mobil's internal website and the divestiture provision of the actual CIC Plan, which clearly established Plaintiffs' non-eligibility. *Id.* at *12.

In February of 2000, Mobil distributed a notice of errata in the SPD, which acknowledged that the Initial SPD had omitted the divestiture provision and clarified the conditions for eligibility for benefits under the CIC Plan, as follows:

> The following text was omitted from the Mobil Corporation Employee Severance plan Summary for U.S. employees in salary groups 19 and below, distributed to all employees in those salary groups in August, 1999. Please keep this with your Summary for future reference.

11

This bullet belongs on page 5 and should be included as an additional reason one is not eligible to participate in the CIC retention/severance package:

- you are no longer employed by the Company or an Affiliate due to a divestiture of any facility or sale or outsourcing of any business and are offered comparable employment by the purchaser or successor of such facility or business, regardless of whether you accept or reject the employment.

*Id.*

Plaintiffs' employment with Mobil was officially terminated between March and May of 2000. The District Court found that each Plaintiff was offered employment with Tosco on terms comparable to his or her employment with Mobil. After the divestiture, Plaintiffs received the same salaries and benefits, and generally reported to the same supervisors, as they had before the divestiture. According to the District Court,

12

No Plaintiff who accepted a position with Tosco missed any work between the date he or she left Mobil and the date he or she began working for Tosco. Moreover, there was no break in any Plaintiffs' [sic] health care coverage from the date he or she left Mobil until he or she started at Tosco.

*Id.* at \*13 (citations omitted).

## C. The District Court's Opinion

In their complaint, Plaintiffs had asserted ERISA claims for breach of fiduciary duty, equitable estoppel and procedural and reporting violations, as well as a "federal common law breach of contract" claim, as bases for the recovery of severance benefits.[3] The District Court conducted an eight-day bench trial. Thereafter, the District Court issued

---

[3]Plaintiffs' counsel explained at oral argument that Plaintiffs did not assert a claim for recovery of benefits under section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), because they thought that any such claim had to be maintained under the terms of the CIC Plan itself, which clearly ruled out severance for Tier 4 employees. Their complaint was filed before our opinion in *Burstein v. Retirement Account Plan for Employees of Allegheny Health Education & Research Foundation,* 334 F.3d 365 (3d Cir. 2003), allowed plaintiffs to state a section 502(a)(1)(B) claim based on the terms of an SPD.

a memorandum opinion granting relief based on a breach of contract, but denying Plaintiffs' ERISA claims.

Specifically, the District Court determined that Plaintiffs' breach of fiduciary duty claim failed because there was no evidence that Plaintiffs had detrimentally relied on the Initial SPD. *Id.* at *16. Detrimental reliance on a material misrepresentation made by the defendant is a necessary element of an ERISA breach of fiduciary duty claim. *See Daniels v. Thomas & Betts Corp.*, 263 F.3d 66, 73 (3d Cir. 2001). However, the District Court concluded that Plaintiffs continued to work for Mobil after the merger was announced "for the opportunity to work for Exxon Mobil–not to collect enhanced severance benefits." *Hooven*, 2004 WL 724496, at *13. Moreover,

> [n]o Plaintiff proved that he or she did anything in reliance upon the understanding that he or she would receive enhanced severance benefits in the event of a divestiture. No Plaintiff turned down any specific job offer in reliance on the belief that he or she would receive severance benefits in the event of a divestiture.

*Id.*

14

Plaintiffs' equitable estoppel and reporting and disclosure violation claims failed for the additional reason that Plaintiffs had failed to establish "extraordinary circumstances,"[4] which "generally involve acts of bad faith on the part of the employer, attempts to actively conceal a significant change in the plan, or commission of fraud." *Jordan v. Fed. Express Corp.*, 116 F.3d 1005, 1011 (3d Cir. 1997). The District Court concluded that Mobil's failure to include the divestiture provision in the SPD amounted to "inartful drafting, not fraud or active concealment." *Hooven*, 2004 WL 724496, at \*17. The District Court noted that Plaintiffs had not asserted a claim for recovery of benefits under ERISA section 502(a)(1)(B) (*see supra* n.3), but ruled that Plaintiffs were entitled to severance benefits on their "federal common law breach of contract" theory. The District Court first held that the CIC Plan was an offer of a unilateral contract that Plaintiffs then accepted by continuing to work for Mobil and, later, Exxon Mobil. *Id.* at \*18. As such, the terms of the plan or offer, as communicated to Plaintiffs

---

[4]*See Ackerman v. Warnaco, Inc.*, 55 F.3d 117, 124 (3d Cir. 1995) (noting that, "under ordinary circumstances," ERISA reporting and disclosure violations do not give rise to substantive remedies); *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 235 (3d Cir. 1994) (to sustain an equitable estoppel claim under ERISA, a plaintiff must establish "(1) a material representation, (2) reasonable and detrimental reliance upon the representation, and (3) extraordinary circumstances").

15

through the Initial SPD, became fixed as Plaintiffs performed. *Id.* (quoting *Kemmerer v. ICI Americas Inc.*, 70 F.3d 281, 287 (3d Cir. 1995); citing *Amatuzio v. Gandalf Sys. Corp.*, 994 F. Supp. 253, 267 (D.N.J. 1998)). Next, the District Court determined that the terms of the Initial SPD differed from the terms of the CIC Plan, and that, under our decision in *Burstein v. Retirement Account Plan for Employees of Allegheny Health Education & Research Foundation*, 334 F.3d 365 (3d Cir. 2003), the terms of the SPD would control, *Hooven*, 2004 WL 724496, at *18-19.

Thus, the District Court reasoned, when Plaintiffs learned, on December 2, 1999, that their division would be divested, their rights to severance as set forth in the Initial SPD had accrued. "In these circumstances," it concluded, "by virtue of Plaintiffs' performance on the unilateral contract, the Court must enforce Defendants' corresponding obligation." *Id.* at *22.

The District Court's March 31 memorandum opinion and order became final on September 2, 2004, when the District Court denied Exxon Mobil's motion to amend the findings of fact and conclusions of law and to alter or amend the judgment. Exxon Mobil appealed the March 31 and September 2 orders. Although Plaintiffs originally cross-appealed the District Court's order as to the fiduciary duty, equitable estoppel and ERISA reporting and disclosure claims, we dismissed the cross-appeal pursuant to a joint

16

stipulation of the parties on January 14, 2005, in accordance with Fed. R. App. P. 42(b).  Thus, we limit our review to the portion of the District Court's opinion and order entering judgment in favor of Plaintiffs on the "breach of contract" claim and ordering Exxon Mobil to pay Plaintiffs severance benefits under the terms of the Initial SPD.

## II.

The District Court exercised federal question jurisdiction, pursuant to 28 U.S.C. § 1331, over Plaintiffs' ERISA and "federal common law" claims.  Our jurisdiction over this appeal from the District Court's final judgment arises under 28 U.S.C. § 1291.

On appeal from a judgment entered after a non-jury trial, we review findings of fact for clear error, Fed. R. Civ. P. 52(a), and conclusions of law de novo, *Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 208 (3d Cir. 2001). Because the primary issue on appeal is the District Court's analysis of the legal effect of the SPD and Initial CIC Plan, we will review its conclusions de novo.

## III.

It is one thing to acknowledge that contract principles apply in ERISA cases.  Clearly, they do.  Generally, "breach of contract principles, applied as a matter of federal law,

17

govern" claims for benefits due under an ERISA plan. *Kemmerer v. ICI Americas Inc.*, 70 F.3d 281, 287 (3d Cir. 1995). However, it is quite another to say that an employee's severance benefit can be grounded in, and enforceable based on, a unilateral contract outside of ERISA's remedial scheme. Although this approach is intuitively appealing, and seemingly appropriate in this complex area, we conclude that it is inconsistent with the basic framework of ERISA and, therefore, cannot be.

The District Court, addressing this issue of first impression, conducted a thoughtful analysis and proposed a reasonable solution. However, upon further review, we disagree with two aspects of its reasoning:

> *First*, its determination that Plaintiffs' rights arose by virtue of a unilateral contract whereby their rights to severance somehow became fixed before Plaintiffs' employment was terminated, and

> *Second*, its conclusion that, based upon *Burstein*, the Initial SPD governed Plaintiffs' rights in this factual setting.

We begin with a fundamental premise: every claim for relief involving an ERISA plan must be analyzed within the framework of ERISA. The District Court found, and the parties agree, that the CIC Plan is an "employee welfare benefit plan" covered by ERISA. *Hooven*, 2004 WL 724996, at *17 (citing 29 U.S.C. § 1002(1)). ERISA is a "comprehensive statute for the regulation of employee benefit plans," *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004); it is intended "to occupy fully the field of employee benefit plans," *Reichelt v. Emhart Corp.*, 921 F.2d 425, 431 (2d Cir. 1990).[5]

The District Court found that Plaintiffs' claim was not based on ERISA, but nevertheless allowed it as arising out of

---

[5]It is true that "Congress has authorized the federal courts to create federal common law" under ERISA. *Plucinski v. I.A.M. Nat'l Pension Fund*, 875 F.2d 1052, 1056 (3d Cir. 1989) (citing *Van Orman v. Am. Ins. Co.*, 680 F.2d 301, 311 (3d Cir. 1982)). However, federal courts may not "lightly create additional rights under the rubric of federal common law"; we may exercise our common law authority to fashion new ERISA causes of action only where we deem it "'necessary to fill in interstitially or otherwise effectuate the statutory pattern enacted in the large by Congress.'" *Van Orman*, 680 F.2d at 312 (quoting *United States v. Little Lake Misere Land Co.*, 412 U.S. 580, 593 (1973)). This is certainly not the case here. There is absolutely no need in this case to create new remedies, either to fill in "gaps" left by the statute or to "effectuate" congressional intent.

a unilateral contract, whereby Mobil's obligation became fixed when Plaintiffs accepted the CIC Plan by continuing to work for Mobil up until and after the merger. Unfortunately for Plaintiffs, this contract-based construct just does not fit within the ERISA structure. ERISA requires "that any contractually accrued rights be discernible from the written terms of the formal ERISA plan documents themselves." *Carr v. First Nationwide Bank*, 816 F. Supp. 1476, 1490 (N.D. Cal. 1993). Although we occasionally employ unilateral contract concepts in ERISA cases, we do so only where "the asserted unilateral contract is based on the explicit promises in the ERISA plan documents themselves." *Id.* at 1490-91. Unilateral contract principles may not operate to create extra-ERISA causes of action for plan benefits.

Our observation in this regard is consistent with the case law on this issue. In *Reichelt v. Emhart Corporation*, plaintiffs argued that their employer's informal "prior practice" of paying severance to any employee who was involuntarily terminated created a unilateral contract that the employer could not amend or terminate by adopting formal severance plans. 921 F.2d at 431-32. The Second Circuit Court of Appeals disagreed, concluding that plan documents, not "prior practice," governed the plaintiffs' rights to severance, *see id.* at 430-31, and that "ERISA preempts civil actions against employers for severance pay predicated on

20

common-law contract principles," *id.* at 431 (citing *Gilbert v. Burlington Indus., Inc.*, 765 F.2d 320, 328 (2d Cir. 1985)).[6]

Other courts of appeals have similarly "refused to allow ERISA plaintiffs to use unilateral contract rules" as a basis to recover benefits promised in an employee welfare benefit plan where "the particular ERISA plan documents in question did not provide a basis for . . . vesting or accrual of the claimed benefits." *Carr*, 816 F. Supp. at 1489-90. *See Alday v. Container Corp. of Am.*, 906 F.2d 660, 665-66 (11th Cir. 1990) (rejecting plaintiff's claim that benefit plan created unilateral contract because plan documents unambiguously provided that employer could terminate or modify the plan); *Musto v. Am. Gen. Corp.*, 861 F.2d 897, 906-07 (6th Cir. 1988) (holding that plan documents that made "perfectly clear that no immutable insurance benefits can be said to vest upon retirement" defeated plaintiffs' unilateral contract claims); *Moore v. Metro. Life Ins. Co.*, 856 F.2d 488, 491-92 (2d Cir. 1988) (stating that plaintiffs' theory that various "representations" of the employer and "actions of the employees in accepting those representations by remaining with the Company" gave rise to an extra-ERISA "contract"

---

[6]The *Reichelt* court noted, further, that the plaintiffs' argument was incompatible with ERISA's substantive provisions, which allow employers flexibility in structuring, amending and terminating severance and other employee welfare benefit plans. 921 F.2d at 432.

"would undermine ERISA's framework," as "plan documents and the SPDs exclusively govern an employer's obligations under ERISA plans").

Apparently recognizing that they cannot maintain a common law claim outside of ERISA, Plaintiffs contend on appeal that their right to relief arises out of ERISA section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). They assert, further, that "whatever title [they] may have affixed to their claim to enforce the conflicting terms of the [Initial] SPD" in their complaint, we must construe it to include a claim under ERISA section 502(a)(1)(B) in accordance with the liberal pleading standards of the Federal Rules of Civil Procedure. *See* Appellees' Br. 53-56 (citing Fed. R. Civ. P. 8(a)). We need not address this issue, or decide whether Plaintiffs' repeated "disavowals" of reliance on section 502(a)(1)(B), *see Hooven*, 2004 WL 724496, at *22, preclude them from taking a different position here, as we conclude that, even under section 502(a)(1)(B), Plaintiffs are not entitled to relief.

A plaintiff seeking to recover under section 502(a)(1)(B) must demonstrate that the benefits are actually "due"; that is, he or she must have a right to benefits that is legally enforceable against the plan. *See* 29 U.S.C. § 1132(a)(1)(B) ("A civil action may be brought – (1) by a participant or beneficiary – . . . (B) to recover benefits *due* to him under the terms of his plan." (emphasis added)). Benefits must have "vested" in order to be legally "due."

22

ERISA exempts severance and other welfare benefit plans from its vesting requirements, *see* 29 U.S.C. § 1051(1), so that benefits offered under such plans are typically "unaccrued and nonvested," *Reichelt*, 921 F.2d at 430. As a result, "[e]mployers or other plan sponsors are generally free under ERISA, for any reason and at any time, to adopt, modify or terminate welfare plans." *Curtis-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995). However, an employer may offer accrued or vested severance benefits, or cede its freedom to amend or cancel a welfare benefit plan, through the terms of the plan itself. *See Inter-Modal Rail Employees Ass'n v. Atchison, Topeka & Santa Fe Ry. Co.*, 520 U.S. 510, 515 (1997); *Hansen v. White Motor Corp. (In re White Farm Equip. Co.)*, 788 F.2d 1186, 1193 ("[T]he parties may themselves set out by agreement or by private design, as set out in plan documents, whether . . . welfare benefits vest, or whether they may be terminated."). Where the plan provides that an employee is irrevocably entitled to a certain benefit, and where all of the conditions precedent to the employee's receipt of that benefit have been satisfied, "that benefit is said to have accrued (or 'vested' or 'ripened') and cannot be taken away by plan amendment or termination." ABA Section of Labor & Employment Law, *Employee Benefits Law* 1052 (2d ed. 2000). At that point, but not before, the employee's rights to benefits become enforceable through a typical ERISA section 502(a)(1)(B) action.

23

The District Court's analysis is incompatible with this statutory scheme. Relying on another district court decision that held that an employee's "rights to receive severance pay . . . vest as she works," *Amatuzio v. Gandalf Sys. Corp.*, 994 F. Supp. 253, 267 (D.N.J. 1998), the District Court concluded that Plaintiffs' rights to benefits became fixed when they accepted Mobil's "offer" by staying in their jobs. *See Hooven*, 2004 WL 724496, at *18. However, treating Mobil's adoption of the CIC Plan as the juncture at which a purported offer of severance was made, and Plaintiffs' "acceptance" through continued employment as the point at which their right to benefits became fixed, undercuts the very concept of "vesting" that is crucial to a claim under ERISA. Whether and how a severance plan provides an employee with enforceable benefits must be determined on a case-by-case basis, according to the terms of the plan itself–not through the automatic application of "unilateral contract principles." *See Carr*, 816 F. Supp. at 1490. Plaintiffs' rights to severance were not fixed as a result of Plaintiffs' "performance," but, rather, at such time as all the conditions to their entitlement, as specified in the CIC Plan documents, had occurred.

The CIC Plan and Initial SPD clearly provide that, even after a change in control, a Tier 4 employee is not entitled to severance benefits until (1) his employment is terminated within two years of the change in control, (2) he continues to work for the Company until "released" and (3) he

24

signs a separation agreement.  It is only after *all* of these requirements are met, *i.e.*, his employment is terminated, he has satisfied his obligation to continue working for the company and he signs a separation agreement, that we can say that a Mobil employee's right to the benefits would have accrued and become fixed and enforceable.

The District Court found that "Plaintiffs' Mobil employment was terminated between March and May 2000," *Hooven*, 2004 WL 724496, at *13, and that all Plaintiffs continued their employment with Mobil up until that date, *see id.* ("No Plaintiff who accepted a position with Tosco missed any work between the date he or she left Mobil and the date he or she began working for Tosco.").  Although the District Court did not enter any findings as to whether or when Plaintiffs signed separation agreements, we conclude from these other findings that Plaintiffs' rights to severance would have accrued, at the earliest, in March of 2000.

This brings us to the question of whether Plaintiffs are entitled to severance benefits at all.  As noted above, the language of the CIC Plan clearly excludes Plaintiffs from the class of employees entitled to receive severance:

> An Eligible Employee will not be considered to have incurred a Severance . . . (ii) in case of a Tier 4 employee, by reason of the divestiture of a facility, sale of a business or business unit, or the

25

outsourcing of a business activity with which the Eligible Employee is affiliated if the Eligible Employee is offered comparable employment by the entity which acquires such facility, business or business unit or which succeeds to such outsourced business activity.

*Hooven*, 2004 WL 724496, at *2 (emphasis omitted).

The District Court acknowledged that, "[u]nder the terms of the CIC Plan, . . . Tier 4 employees continued to be ineligible for severance benefits in the event of a divestiture," *id*., but held that Plaintiffs were nonetheless entitled to severance benefits because the Initial SPD conflicted with the CIC Plan and led Plaintiffs to "reasonably expect that Mobil intended to offer severance benefits" in the event of a divestiture, *id.* at *19. This conflicting language, it held, "'superseded and modified'" the Plan. *Id.* (citation omitted).

The District Court looked to the terms of the Initial SPD believing that certain language we employed in *Burstein v. Retirement Account Plan for Employees of Allegheny Health Education & Research Foundation*, 334 F.3d 365 (3d Cir. 2003), required it to do so. However, *Burstein* presented a very different set of facts.

26

The *Burstein* plaintiffs were former employees of Allegheny Health Education and Research Foundation ("AHERF") and participants in its Retirement Account Plan, an ERISA defined benefit pension plan that was terminated after AHERF filed for bankruptcy. The plaintiffs sought benefits under the plan based upon a summary plan description and a plan brochure. Although the AHERF plan itself generally provided that a participant's interest did not vest until he had completed five years of service with AHERF, the SPD clearly and unequivocally stated that a plan participant's interest in his account vested upon the plan's termination:

> If the Plan is terminated, you will *automatically become vested* in your account, *regardless of how many years of service* you have earned. No more annual retirement credits will be made to your account, but you will continue to receive interest credits until payments from your account begin.

*Id.* at 375.

The language of the plan, however, described the impact of a plan termination differently, imposing "a significant qualification," *id.*, on a participant's vesting rights, and essentially contradicting the SPD:

27

> Upon the termination or partial termination of the Plan, the right of all affected participants to benefits accrued to the date of such termination or partial termination shall become nonforfeitable . . . *to the extent funded* as of such date.

*Id.* at 376 (emphasis in original). Contrary to the "impression" given by the plan brochure and SPD, the plan was funded only at the minimum level prescribed by ERISA, which did not require AHERF to fund accounts for participants who had not yet met the five-year service requirement. *Id.*

We ruled that the *Burstein* plaintiffs had stated a section 502(a)(1)(B) claim for benefits due under the plan, and that, under the given facts, the language of the SPD would govern. Noting that Congress intended the SPD to be "the primary document on which plan participants must rely," and that ERISA specifically requires employers to make the SPD "transparent, accurate, and comprehensive," we stated that, "where a summary plan description conflicts with the plan language, it is the summary plan description that will control." *Id.* at 379 (citing 29 U.S.C. § 1022(a)). We then observed that claims under section 502(a)(1)(B) for benefits due under a plan are "contractual in nature." Under these circumstances, we held, "[i]f an SPD conflicts with a plan document, then a court should read the terms of the 'contract'

28

to include the terms of a plan document, as superseded and modified by conflicting language in the SPD." *Id.* at 381.

Burstein must be understood in context. There, we construed an SPD that was in effect when the plaintiffs' benefits actually vested, *i.e.*, when the AHERF plan terminated. Based on the terms of the SPD, all of the conditions precedent to their receipt of such benefits had been satisfied. As discussed above, once a benefit accrues, "the employer is contractually and statutorily obligated to provide that benefit and may not retrospectively amend the plan to divest the plan participant of a payment that he was already entitled to receive." *Algie v. RCA Global Commc'ns, Inc.*, 891 F. Supp. 875, 884 (S.D.N.Y. 1994).

Until the vesting or accrual date, however, the summary plan description is just that–a summary of the plan's terms. Although it is the "primary document on which plan participants must rely," *Burstein*, 334 F.3d at 379, it is not the Plan, and thus not the authoritative source of plan terms. This is particularly true where, as here, the SPD contains specific language stating that "the official Plan documents . . . govern in all cases." For this reason, we read *Burstein*'s holding as limited to its facts: where an SPD *in effect when the plaintiffs' benefits vest* (under the terms of the plan or the SPD, if it differs from the plan in this respect) clearly contradicts the plan, the terms of the SPD can be held to control for purposes

29

of a claim for plan benefits pursuant to ERISA section 502(a)(1)(B).

Here, even assuming that the Initial SPD did contradict the CIC Plan as of December 1999, that would be irrelevant because Plaintiffs' right to severance benefits did not accrue while the Initial SPD was in effect. In February 2000, before Plaintiffs' employment terminated and their rights vested, Exxon Mobil recognized the conflict between the CIC Plan and the Initial SPD, and distributed an errata notice, effectively amending the Initial SPD[7] to make it specific and

_____

[7]We reject the District Court's view that the provision of the SPD and CIC Plan prohibiting Mobil from amending or terminating the *Plan* somehow also prohibited Exxon Mobil from correcting the *SPD* to conform to the terms of the Plan. *See Hooven*, 2004 WL 724496, at * 22. In fact, we note that an agreement not to amend an SPD, of the sort that the District Court found here, would likely violate ERISA; the statute's SPD provisions implicitly *require* employers and plan administrators to correct misleading or incomplete SPDs:

> The provision of ERISA which requires the publication and distribution of an "accurate" summary plan description, 29 U.S.C. § 1022(a)(1), when taken in conjunction with the fiduciary duties of the employer, 29 U.S.C. § 1104(a), imposes . . . [a] "duty to correct" an employer if and when the employer knows or should know that a statement in a Summary Plan

30

consistent with the Plan provision stating that divested Tier 4 employees offered comparable employment with the acquirer were ineligible for severance. The District Court found that the errata notice "clearly and accurately referred to the divestiture provision" of the CIC Plan. *Hooven*, 2004 WL 724496, at \*12. It thus cured any defect in the August 1999 SPD. By the time that Plaintiffs would have become entitled to benefits under section 502(a)(1)(B), the SPD and CIC Plan were consistent; both made clear that employees in Plaintiffs' position were not entitled to benefits. Accordingly, Plaintiffs' rights to severance never arose.

## IV.

We note in closing that Plaintiffs protested at oral argument that holding that they were not entitled to benefits on a unilateral contract theory would leave them without a remedy for Mobil's material omission in the Initial SPD. A remedy for this omission is essential, they urged, to give

---

Description has become misleading to potential participants.

*McAuley v. Int'l Bus. Machs. Corp.*, 165 F.3d 1038, 1046 (6th Cir. 1999). Moreover, while we made a leap in *Burstein* to conclude that, under those unique facts, the SPD terms superseded the terms of the plan, we cannot accept the premise advanced here, that Mobil's agreement not to change the Plan somehow also limits its ability to correct an incorrect SPD.

31

effect to "Congress's desire that the SPD be transparent, accurate and comprehensive." *Burstein*, 334 F.3d at 378-79 (citing 29 U.S.C. § 1022(a)-(b)).

We find Plaintiffs' concerns to be misplaced here. Contrary to their assertion, employees injured by a mistake in a summary plan description have "a panoply of remedial devices at [their] disposal." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985). Section 502(a)(1)(B) provides a cause of action for benefits accrued under an ERISA plan or SPD. *See supra* Part III; *Burstein*, 334 F.3d at 379. Moreover, any plaintiff who has relied on an inaccurate or misleading term of an SPD to his or her detriment can recover on a claim for breach of fiduciary duty, *see Burstein*, 334 F.3d at 387, or, in "extraordinary circumstances," an equitable estoppel claim, *see Curcio*, 33 F.3d at 235, under ERISA section 502(a)(3)(B), 29 U.S.C. § 1132(a)(3)(B).

In this case, Plaintiffs were unable to maintain a breach of fiduciary duty claim or a claim based on the equities because the District Court held that they never relied on the Initial SPD. By the time that benefits due under the Initial SPD would have accrued, the error was corrected and Plaintiffs were well aware that they were not entitled to them. Under these facts, we will not bootstrap the error in the Initial SPD, which the District Court characterized as one of

32

"inartful drafting," and on which Plaintiffs did not rely, into a cause of action for benefits due under the CIC Plan.

## V.

We will accordingly REVERSE the judgment of the District Court and REMAND with instructions to enter judgment in favor of Exxon Mobil.

_____