**Kelly ROARTY**

v.

**TYCO INTERNATIONAL LTD. GROUP BUSINESS TRAVEL ACCIDENT INSURANCE PLAN, an employee welfare benefit plan; Life Insurance Company of North America, Plan Administrator, Appellants.**

**No. 08–4219.**

United States Court of Appeals, Third Circuit.

Argued Sept. 30, 2009.

Filed July 8, 2010.

---

Mark C. Stephenson (Argued), Nelson Levine DeLuca & Horst, LLC, Blue Bell, PA, for Appellant Life Insurance Company of North America Thomas M.

Christina (Argued), Ogletree, Deakins, Nash, Smoak, & Stewart, P.C., Greenville, SC, for Appellant Tyco International Ltd. Group Business Travel Accident Insurance Plan.

Richard R. Weir, Jr., Michele D. Allen (Argued), Richard A. Weir, Jr., P.A., Wilmington, DE, for Appellee.

Before: McKEE, Chief Judge, CHAGARES, and NYGAARD, Circuit Judges.

## OPINION OF THE COURT

CHAGARES, Circuit Judge.

Appellants Tyco International, Ltd. Group Business Travel Accident Insurance Plan (the "Plan") and Life Insurance Company of North American ("LINA") appeal the District Court's final judgment in favor of appellee, Kelly Roarty ("Roarty" or "Mrs. Roarty"). We will vacate and remand.

### I.

Because we write solely for the benefit of the parties, we will only briefly summarize the essential facts. Roarty's late husband, Daniel Roarty ("Mr. Roarty"), worked as a Senior Product Manager for Scott Instruments. He was enrolled in the company's Business Travel Accident Insurance Plan (the "BTA Plan"). Prior to 2002, the BTA Plan provided full-time coverage, "24 hours a day, whether traveling or not, at home, at work, on vacation, while traveling anywhere in the world, or while on a leave of absence" to employees who, like Mr. Roarty, earned at least $75,000

per year. Appendix ("App.") 880. The benefits provided under this version of the BTA Plan were summarized in a Summary Plan Description ("SPD") effective September 2000 (the "2000 SPD"). *See* App. 879–83.

In 2001, Tyco International Ltd. ("Tyco") acquired Scott Instruments. In 2002, Tyco selected LINA to become the underwriter for a new BTA Plan. This new version of the plan became effective July 1, 2002. App. 271. It provided more limited coverage, covering only accidents occurring while an employee was traveling on business for Tyco. *Id.*

Tyco prepared a new SPD in 2002, (the "2002 SPD"), but this document did not reflect the changes made to the BTA Plan. The 2002 SPD did, however, include a statement that the BTA Plan was "subject to change July 1, 2002." App. 423. Tyco also prepared a Summary of Material Modifications ("SMM"), and this document described the change in the scope of the BTA Plan's coverage. App. 486. The SMM began by noting that the "following are changes effective July 1, 2002 with respect to Tyco's Business Travel Accident (BTA), Accidental Death and Dismemberment (AD & D) and Personal and Family Accident (PFA) insurance plans. Please file this information with your important insurance documents." *Id.* The SMM included the following notice describing the changes to the BTA Plan:

> The following change applies to the Business Travel Accident plan only. Effective for accidents on or after July 1, 2002, for any non-business activity, including personal travel, and for accidents which are the result of the employee being under the influence of alcohol or illegal drugs will no longer be covered.

*Id.*

In the Summer of 2004, the Roartys had planned a vacation to Pittsburgh during the first week of August. In July, Mr. Roarty learned of an issue at a production plant for one of Scott Instruments' suppliers. He decided to schedule a meeting at this plant while on his trip to Pittsburgh. To accommodate this meeting, he left a few days earlier than he had planned, drove separately from his wife, and brought materials that would allow him to conduct business while on his trip. The issue at the production plant was resolved without requiring an in-person meeting, but Mr. Roarty made several business calls while on his trip to Pittsburgh. He and his family attended a family wedding and engaged in several personal leisure activities during the trip. On August 8, 2004, while driving home from Pittsburgh, his car was struck by another car, and Mr. Roarty was killed.

After the accident, Roarty was initially told by one of her husband's coworkers that his death would be covered by the BTA Plan, and she filed a claim for benefits on September 3, 2004. LINA denied Roarty's claim, explaining in a letter that a Tyco representative had informed LINA that "Mr. Roarty was NOT on business travel at the time of the accident that caused his death." App. 609. The letter explained that the BTA Plan only covered accidents that occurred during the course of authorized business trips and that, since Tyco had stated that Mr. Roarty was not on an authorized business trip, benefits could not be paid. *Id.* Roarty appealed this denial, but LINA maintained its position that no benefits were due. *See* App. 558–60 (letter explaining decision).

Roarty initiated the instant action by filing a complaint in the District Court for the District of Delaware on March 23, 2006. The complaint alleged that Roarty was entitled to benefits under the BTA

Plan, that the appellants "arbitrarily and capriciously" denied her claim for benefits, that LINA breached the fiduciary duties it owed her by "summarily" denying her claim, and that the appellants breached the terms of the BTA Plan.App. 161–62.

Roarty's claims were tried in a bench trial held on April 21, 2008. Roarty testified concerning the nature of her husband's trip, explaining that although her family had previously planned a vacation to Pittsburgh, her husband modified his plans to accommodate business activities. She testified that she handled all of her husband's benefits paperwork, and that her husband never received the 2002 SPD or the subsequent SMM. A colleague of Mr. Roarty's also testified that he had never received these updated summary documents. A benefits manager for Tyco testified concerning the summary documents prepared and distributed in connection with the BTA Plan.

By Order entered September 15, 2008, 2008 WL 4221280, the District Court ordered judgment in favor of Roarty and against the appellants in the amount of $500,000, along with reasonable attorneys fees pursuant to 29 U.S.C. § 1132(g)(1). App. 4–5. Evaluating the testimony regarding Tyco's efforts to distribute the 2002 SPD and subsequent SMM, the District Court found Mrs. Roarty's testimony that Mr. Roarty had never received these documents, along with the testimony of Mr. Roarty's colleague that he had not received these documents, to be credible. App. 13. The court found the testimony of the Tyco benefits manager concerning whether the 2002 SPD and SMM were actually mailed to Scott Instruments employees not to be credible. *Id.* The District Court concluded, "the court finds by a preponderance of the evidence that Tyco and [the distribution company] never distributed, by mail or otherwise, the 2002

SPD or the SMM to Daniel Roarty, [his colleague who testified], or any other employee at Scott Instruments." *Id.* It noted that the "reason for Tyco's failure to distribute these materials to Scott Instrument's employees according to ... Tyco's general practice—while perhaps due to recordkeeping errors related to Tyco's recently acquiring the company—is not apparent from the record." *Id.* at 13, n. 3.

The District Court concluded that the "SMM was ineffective because it was never distributed, by mail or otherwise, to Scott Instruments employees," and that the "2002 SPD was similarly ineffective." App. 17, n. 7. It further reasoned that "even if the 2002 SPD had been reasonably distributed, it would not matter" because the "relevant terms of the 2000 SPD and the 2002 SPD are the same." *Id.* "While the 2002 SPD indicates it is subject to change, the specific change is not provided." *Id.* Applying this court's instruction that where a " 'summary plan description conflicts with the plan language, it is the summary plan description that will control' " *id.* 16 (quoting *Burstein v. Ret. Account Plan for Employees of Allegheny Health Educ. and Research Found.,* 334 F.3d 365, 378 (3d Cir.2003)), the District Court held that "the terms of the 2000 SPD control for the purposes of Mrs. Roarty's claim." *Id.* 17.

Because the 2000 SPD provided that "Daniel Roarty was 'covered 24 hours a day, whether traveling or not, at home, at work, on vacation, while traveling anywhere in the world ....' ", *id.* (citations omitted), the District Court concluded LINA's denial based on the terms of the modified BTA Plan was an abuse of discretion. *Id.* The District Court therefore held that "[u]nder ERISA § 502(a)(1)(B), Mrs. Roarty may recover the $500,000 due to her under the BTA Plan." *Id.* Based on this finding, the District court did not

reach Roarty's claim that LINA breached its fiduciary duties. *Id.*, n. 9.

On October 14, 2008, the appellants timely appealed.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1), and this Court has jurisdiction pursuant to 28 U.S.C. § 1291.

On appeal from a judgment entered after a bench trial, this court reviews "findings of fact for clear error and conclusions of law de novo." *Pell v. E.I. DuPont de Nemours & Co. Inc.*, 539 F.3d 292, 300 (3d Cir.2008).

## III.

The District Court's judgment in favor of Roarty relied on our holding in *Burstein* that "where a summary plan description conflicts with the plan language, it is the summary plan description that will control." 334 F.3d at 378. *See* App. 16. As we later clarified, however, this rule applies only to the SPD in effect when an ERISA plaintiff's claim for benefits accrues. *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 577 (3d Cir.2006) (explaining that *Burstein*'s holding is "limited to its facts: where an SPD *in effect when the plaintiff's benefits vest* ... clearly contradicts the plan, the terms of the SPD can be held to control for purposes of a claim for plan benefits pursuant to ERISA section 502(a)(1)(B)." (emphasis in original)). In *Hooven*, we held that an ERISA plaintiff cannot base a claim for benefits under ERISA section 502(a)(1)(B) on an SPD that has been superseded or corrected by another document, such as an "errata notice" that effectively eliminates any conflict between the SPD and the plan language. 465 F.3d at 578. Accordingly, before *Burstein* may be applied, we must first determine the analytically distinct question of which summary document amounts to the operative summary document, the "SPD in effect."

The District Court concluded that the 2000 SPD was the operative summary document based on its factual finding that the 2002 SPD and the SMM were not distributed to the Roartys. App. 17, n. 7. We cannot agree. The District Court assumed that Tyco's failure to distribute these documents rendered them "ineffective," *id.*, but we have "repeatedly held that under ordinary circumstances defects in fulfilling the reporting and disclosure requirements of ERISA," such as Tyco's failure to ensure distribution of the updated summary documents in this case, "do not give rise to a substantive remedy other than that provided for in section 502(a)(1)(A) of that Act." *Ackerman v. Warnaco, Inc.*, 55 F.3d 117, 124 (3d Cir.1995). The remedy the District Court applied here—deeming the change in the BTA Plan ineffective based on Tyco's failure to provide notice of the change to Scott Instruments employees— is only available upon a showing of "extraordinary circumstances." *Lettrich v. J.C. Penney Co., Inc.*, 213 F.3d 765, 770 (3d Cir.2000); *see also Ackerman*, 55 F.3d at 124–5.

As the District Court identified, "ERISA requires plan administrators to notify plan participants of material modifications to employee welfare plans." App. 10 (citing 29 U.S.C. § 1024(b)(1); *Lettrich*, 213 F.3d at 769). However, the failure to comply with these notice requirements does not automatically render such a plan amendment ineffective. Rather, "even if as the result of [the employer's] negligence ... the employees did not receive written notice" of a material modification to an ERISA benefit plan, "we are unable to conclude that ERISA provides the remedy that plaintiffs seek. Plaintiffs are limited

to their statutory remedies under such facts." *Ackerman,* 55 F.3d at 124. The "remedy of striking a plan amendment" is available only upon a showing of "extraordinary circumstances." *Lettrich,* 213 F.3d at 770. In *Ackerman,* we listed two examples of such extraordinary circumstances, "where the employer has acted in bad faith, or has actively concealed a change in a benefit plan, and the covered employees have been substantially harmed by virtue of the employer's actions." 55 F.3d at 125.

Absent such a showing of extraordinary circumstances, the 2002 SPD *as modified by the SMM* functioned as the operative summary document. The SMM explained that, effective July 1, 2002, the BTA Plan no longer covered accidents occurring during non-business activity, including personal travel. Because the District Court assumed that Tyco's failure to distribute the updated documents to Scott Instruments employees rendered them "ineffective" without evaluating whether Roarty had established "extraordinary circumstances," we will remand for the District Court to consider this issue in the first instance. On remand, the District Court may also consider Roarty's equitable claim for breach of fiduciary duty under ERISA section 502(a)(3), an issue it did not reach in the prior opinion. *See* App. 17, n. 9.

## IV.

For the foregoing reasons, we will vacate the judgment of the District Court and remand for further proceedings consistent with this opinion.