Aline ABNATHYA, Appellee,

v.

HOFFMANN–LA ROCHE, INC., a corporation or business organization; John Doe, said name being fictitious; James Smith, said name being fictitious; Henry Jones, said name being fictitious.

Hoffmann–La Roche Inc., Appellant.

No. 92–5487.

United States Court of Appeals,
Third Circuit.

Argued April 28, 1993.

Decided Aug. 5, 1993.

Stephen Gold, (argued), Freeman & Bass, Newark, NJ, for appellee.

John A. Ridley, (argued), Anthony J. Cincotta, Crummy, Del Deo, Dolan Griffinger & Vecchione, Newark, NJ, for appellant.

Before: BECKER, HUTCHINSON, and WEIS, Circuit Judges.

## OPINION OF THE COURT

BECKER, Circuit Judge.

Aline Abnathya, a former employee of defendant Hoffmann–La Roche Inc., brought this suit challenging Hoffmann's decision to discontinue her long-term disability benefits. Concluding that Hoffmann's decision was arbitrary and capricious, in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* (1988), the district court granted summary judgment in favor of Abnathya. Because Hoffmann's Long–Term Disability Benefits Plan ("the LTD Plan") gives Hoffmann, as plan administrator, the discretion to make eligibility determinations under the Plan, the district court correctly applied the deferential arbitrary and capricious standard of review required under *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989). However, we find no support in the record for the court's

conclusion that Hoffmann's decision was arbitrary and capricious. Rather, the record clearly demonstrates the contrary.

■ Under the arbitrary and capricious standard, the court must defer to the administrator of an employee benefit plan unless the administrator's decision is clearly not supported by the evidence in the record or the administrator has failed to comply with the procedures required by the plan. Hoffmann's determination that Abnathya was no longer totally disabled within the meaning of the LTD Plan is clearly supported by the evidence in the record, and there is no evidence that Hoffmann failed to comply with any of the procedures required under the Plan. Hence we will reverse the grant of summary judgment in favor of Abnathya and will order that summary judgment be entered in favor of Hoffmann.

### I.

Hoffmann maintains a self-funded employee benefits plan which includes the Long–Term Disability Benefits Plan. The LTD Plan is an employee welfare benefit plan governed by ERISA. *See* ERISA § 3(1), 29 U.S.C. § 1002(1) (1988). The Plan provides benefits beginning after 182 consecutive days of "total disability," which is defined by the Plan as occurring where

(a) for the [first two years during which benefits are received] the Member is completely unable to perform any and every duty of his regular occupation and is not engaged in any occupation or employment for wage or profit; and (b) for the period commencing twenty-four months after [benefits are first received] the Member is completely unable to perform any and every duty of any gainful occupation for which he is or becomes reasonably qualified by training, education or experience.

Hoffmann acts as the claims administrator for the LTD Plan. The Plan authorizes a committee, whose members are appointed by Hoffmann's Board of Directors, to make all determinations regarding a claimant's eligi-

bility for and entitlement to LTD Plan benefits.[1] Specifically, the Plan provides:

> The Committee shall have ... the power to interpret and construe the Plan, to direct payment of benefits and to determine all questions relating to eligibility for membership, eligibility for disability income benefits, and computation of benefits, and all similarly related matters necessary or advisable to operate and administer the Plan. The Committee's determination of all questions arising under the Plan shall be binding upon all employees, Members and any others concerned.

The Plan further provides that participants receiving LTD benefits may be required to undergo semi-annual medical examinations by a physician appointed by the Committee and/or to submit evidence to the Committee of continued total disability; if the Committee determines that a participant is no longer totally disabled, Hoffmann will cease paying LTD benefits.[2] The participant may appeal a decision to discontinue benefits by requesting in writing that the Committee review the decision. The second determination by the Committee becomes final.

Abnathya worked for Hoffmann as a data entry operator from October of 1967 until approximately September 20, 1985. She had contracted polio as a child, which permanently paralyzed her left leg, requiring that she wear a full brace and that she walk with a cane. Over the years at her job at Hoffmann, she developed severe pain in her neck, shoulders, arms, hands, and legs from having to sit for long periods of time. In February of 1986, claiming that she suffered from a totally disabling orthopedic condition, Abnathya applied for LTD Benefits.

As support for her claim, Abnathya submitted a report, dated February 6, 1986, from Dr. Andre Birotte, an orthopedic surgeon who was her attending physician. Dr. Birotte described Abnathya's symptoms as "severe pain in the left ankle and right knee and right hand." His diagnosis was "probable degenerative joints disease of the lumbosacral spine and hips; bilateral flaccid paralysis secondary to poliomyelitis." He concluded that Abnathya was "totally disabled for any gainful employment." Abnathya had also been examined in January of 1986 by Dr. Albin Leonhardt, an orthopedic surgeon selected by MetLife, *see supra* n. 1, who similarly concluded that she was "totally permanently disabled as a result of ... postpolio syndrome" and that she was "unable to engage in any type of gainful activity."

Based on these medical evaluations, the Committee determined that Abnathya was totally disabled and therefore eligible for LTD benefits, which she began receiving on March 24, 1986. In accordance with the LTD Plan, Hoffmann requested semi-annual statements from Abnathya's treating physician in September of 1986, March of 1987 and October of 1987. In each of his statements, Dr. Birotte repeated his original diagnosis and his opinion that Abnathya was totally disabled and unable to perform any gainful employment.

---

**1.** Under an administrative services agreement between Hoffmann and Metropolitan Life Insurance Company ("MetLife"), MetLife is responsible for certain administrative services in connection with the LTD Plan, including claims processing, payment of claims, provision of forms, and coordination of medical examinations of claimants. However, as the district court found, Hoffmann delegated no fiduciary duties under the LTD Plan to MetLife and therefore MetLife has no authority or responsibility to make any decisions regarding eligibility for benefits. Accordingly, the court concluded that MetLife, which was originally named as a defendant, could not be liable under ERISA for the decision to discontinue Abnathya's benefits, and the court therefore dismissed all of Abnathya's claims against MetLife. That decision has not been appealed.

**2.** Section 4.4(b) of the Plan provides in part:

> A Member who is in receipt of a disability income under the Plan may be required not more often than semi-annually to undergo a medical examination by a physician or physicians appointed by the Committee and/or to submit evidence of continued Total Disability satisfactory to the Committee. *If the Committee determines from such medical examination or evidence, or otherwise, that the Member is no longer Totally Disabled, or if the Member refuses to submit to a medical examination or to submit evidence of Total Disability as required by the Committee, his disability income under this Plan shall cease as of the date of such determination or refusal.* (emphasis added).

In March of 1988, as part of Hoffmann's two-year review of Abnathya's continued eligibility and pursuant to the LTD Plan, Hoffmann asked that Abnathya be re-examined by Dr. Leonhardt, who again diagnosed lower left extremity paralysis due to polio, but stated that Abnathya's orthopedic disability was "moderate" and "partial" and that she was "able to do work of a sedentary nature . . . since there is no disability related to the upper extremities." In spite of this evaluation, the Committee continued Abnathya's LTD benefits for two more years, during which Abnathya continued to submit semiannual statements from Dr. Birotte, reflecting his consistent opinion that she was totally disabled and unable to perform gainful employment.

In 1990, as part of the four-year review of Abnathya's continued total disability and pursuant to the Plan, Hoffmann required that Abnathya be examined again by an independent medical examiner. She was examined in January of 1990 by Dr. Arthur Canario, an orthopedic surgeon selected by MetLife, who described her disability in a brief, two-page letter-report, concluding, "In my opinion, the patient has a severe disability but is certainly capable of working. . . . [W]ith independent transportation[,] I see no reason why she would not be employable in the Hoffmann–La Roche company."

Because Dr. Canario's conclusions conflicted with the semi-annual reports of Abnathya's treating physician and because Abnathya expressed dissatisfaction with Dr. Canario's examination, Hoffmann requested a second examination by a different independent medical examiner. In March of 1990, Abnathya was examined by Dr. David Greifinger, an independent orthopedic surgeon selected by MetLife. Dr. Greifinger's written evaluation of Abnathya's medical condition was significantly more detailed than Dr. Canario's report, but came to the same conclusion that Abnathya was not totally disabled:

> This 41–year old female has longstanding poliomyelitis. It has affected her left lower extremity. The patient does have significant disability. The patient is independent with her ambulation. I would suggest that she can work in a sedentary

fashion. It would be important for her to remain active. I believe that some tasks can be carried out.

Based on the reports of Drs. Canario and Greifinger, the Committee determined that Abnathya was no longer totally disabled within the meaning of the LTD Plan and voted to terminate her LTD benefits effective July 31, 1990. Abnathya was notified of this decision by letter dated July 30, 1990.

Abnathya appealed the Committee's decision in a letter to Hoffmann dated August 5, 1990. As the basis for her appeal, Abnathya stated that the examination by Dr. Canario was extremely cursory and that the conclusions of both Canario and Greifinger were erroneous. On August 15, 1990, Abnathya's newly retained counsel wrote to Hoffmann setting forth the reasons for her appeal, specifically: (1) that it was improper for the Committee not to have relied on Dr. Birotte's opinion since he was the treating physician and since the Committee had relied on his opinion of Abnathya's condition for the previous four years; and (2) that the examinations of Drs. Canario and Greifinger were cursory and incomplete and therefore were not valid grounds for the discontinuation of benefits.

Responding to Abnathya's request for review of the Committee's decision to discontinue her benefits, Hoffmann informed her in late August that the Committee would meet to review its original determination on September 6, 1990. Hoffmann also informed Abnathya of her right to submit additional medical evidence in support of her appeal. Abnathya submitted a brief note from Dr. Birotte, dated August 14, 1990, stating that Abnathya had been under his care since July 26, 1985, that her diagnosis was "bilateral flaccid paralysis secondary to poliomyelitis," and that she "is not able to perform any gainful activities." Abnathya submitted no other medical evidence in support of her appeal.

On September 5, 1990, Abnathya's counsel wrote Hoffmann requesting that the Committee's review of its decision (scheduled for the following day) be delayed while counsel obtained additional medical evaluations. This letter was not received by Hoffmann until September 11, 1990, five days after the Com-

mittee had voted to affirm its decision to discontinue Abnathya's benefits, and the Committee declined to reconsider its vote to affirm. By letter dated October 9, 1990, Hoffmann informed Abnathya of the Committee's final decision. The letter explained that the decision to affirm was based on all of the information submitted to the Committee and that the information, particularly the reports of Drs. Canario and Greifinger, supported the Committee's original conclusion that Abnathya's orthopedic condition was no longer totally disabling within the meaning of the LTD Plan. The letter noted that Abnathya had submitted no new medical information in support of her appeal inasmuch as Dr. Birotte's conclusory note simply restated his previous diagnosis and his opinion that Abnathya was totally disabled.

In January of 1991, Abnathya requested that the Committee again reconsider its decision to deny benefits, and in February of 1991, she submitted three additional medical evaluations: a neuropsychiatric examination dated August 19, 1990; an orthopedic examination dated August 29, 1990, concluding that Abnathya is "totally disabled as a physiological unit"; and an evaluation by a pulmonary specialist dated January 15, 1991. Hoffmann declined to reconsider its determination on the grounds that the Committee's vote on September 6, 1990, to affirm the decision to discontinue benefits was final.

In April 1991, Abnathya filed a complaint against Hoffmann in the Superior Court of New Jersey alleging that Hoffmann had breached its contract to provide long-term disability benefits. Hoffmann removed the case to federal district court because Abnathya's claim comes under section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B) (1988), which provides a federal cause of action for suits to recover benefits under employee benefit plans or to enforce the terms of such plans. Section 502(a)(1)(B) of ERISA preempts state contract law with respect to such claims. *See* ERISA § 514(a), 29 U.S.C. § 1144(a) (1988).

Hoffmann moved for summary judgment, arguing that there was no question of material fact that Hoffmann did not abuse its discretion in determining that Abnathya was no longer totally disabled under the Plan. After a hearing, the district court orally denied Hoffmann's motion, opining that there was a genuine issue of material fact as to whether Hoffmann's decision to discontinue Abnathya's benefits was arbitrary and capricious.[3]

Several weeks later, the district court filed a written opinion explaining its decision to deny Hoffmann's motion for summary judgment and granting, *sua sponte,* summary judgment in favor of Abnathya. The court stated that, after a more careful review of the record, it had determined that there was no genuine issue of fact, and that Hoffmann had abused its discretion in discontinuing Abnathya's benefits. Accordingly, the court ordered that her benefits be reinstated and that damages be assessed by a magistrate judge. Hoffmann moved for reconsideration, but its motion was denied. After a hearing on damages, the magistrate judge filed a report and recommendation that Abnathya was entitled to $7,113.55 in damages for unpaid monthly LTD benefits and $2,603.42 for various medical expenses and other contributions owed to Abnathya under the LTD Plan. The district court adopted this recommendation, and Hoffmann appealed. We have jurisdiction under 28 U.S.C. § 1291. The district court has stayed execution of the judgment pending the appeal.

## II.

### A.

In *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989), the Supreme Court held that

a denial of benefits challenged under § 1132(a)(1)(B) [of ERISA] is to be reviewed under a *de novo* standard *unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.*

---

**3.** The court also dismissed Abnathya's claim for punitive damages and struck Abnathya's demand for a jury trial. Neither of these rulings have been challenged on appeal.

(emphasis added); *see also Stoetzner v. United States Steel Corp.*, 897 F.2d 115, 119 (3d Cir.1990) (application of deferential arbitrary and capricious standard of review is appropriate when benefit plan gives administrator discretionary authority to determine eligibility for benefits); *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 983 (6th Cir.1991) (same).

■ The district court found, and the parties agree, that the LTD Plan expressly gives Hoffmann discretionary authority to determine eligibility for benefits under the Plan. Specifically, section 8.5 of the Plan provides that the Committee shall have "the power to interpret and construe the Plan, to direct payment of benefits and to determine all questions relating to eligibility ... for disability income benefits," and that "[t]he Committee's determination of all questions arising under the Plan shall be binding upon all Employees, Members, and any others concerned." This language clearly gives Hoff-

mann the discretion to make eligibility determinations under the Plan. Accordingly, Hoffmann's decision to discontinue Abnathya's LTD benefits must be affirmed unless it is arbitrary and capricious.

■ Under the arbitrary and capricious (or abuse of discretion) standard of review,[4] the district court may overturn a decision of the Plan administrator only if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Adamo v. Anchor Hocking Corp.*, 720 F.Supp. 491, 500 (W.D.Pa.1989); *see also Miller*, 925 F.2d at 984 (ERISA plan administrator's decisions on eligibility are not arbitrary and capricious if "rational in light of plan's provisions") (citation omitted). This scope of review is narrow, and "the court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits." *Lucash v. Strick Corp.*, 602 F.Supp. 430, 434 (E.D.Pa.1984).[5]

---

4. The "arbitrary and capricious" standard is essentially the same as the "abuse of discretion" standard. *See Nazay v. Miller*, 949 F.2d 1323, 1336 (3d Cir.1991); *Daniels v. Anchor Hocking Corp.*, 758 F.Supp. 326, 328–30 (W.D.Pa.1991).

5. In *Firestone*, the Supreme Court stated that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion." 489 U.S. at 115, 109 S.Ct. at 957 (quotation omitted). Relying on this language, Abnathya argues that there is a significant conflict of interest between Hoffmann's pecuniary interests and its role in determining eligibility for benefits under the LTD Plan, which, she contends, requires a more stringent standard of review. Although some degree of conflict inevitably exists where an employer acts as the administrator of its own employee benefits plan, the conflict here is not significant enough to require special attention or a more stringent standard of review under *Firestone*. Under the LTD Plan, Hoffmann makes fixed contributions to the Plan's Fund, which is held by a separate Trustee, and the Plan provides that the moneys in the fund may only be used "for the exclusive benefit of Members under this Plan or for the payment of expenses of the Plan and the Fund." Hoffmann therefore incurs no direct expense as a result of the allowance of benefits, nor does it benefit directly from the denial or discontinuation of benefits. *See Woolsey v. Marion Laboratories, Inc.*, 934 F.2d 1452, 1459 (10th Cir.1991) (no conflict of interest where employer/plan administrator could not obtain any reversion of

money from the fund). Moreover, there is no evidence of bad faith on the part of Hoffmann. *See Nazay v. Miller*, 949 F.2d 1323, 1335 (3d Cir.1991) (no conflict of interest existed that would require more stringent standard of review where employer, who administered ERISA benefits plan, had demonstrated no bad faith and "had incentives to avoid the loss of morale and higher wage demands that could result from denials of benefits.").

We note that the highly deferential standard of review adopted by the Supreme Court in *Firestone* where the employee benefit plan gives the administrator discretionary authority to determine eligibility has been sharply criticized. *See* John H. Langbein, *The Supreme Court Flunks Trusts*, 1990 Sup.Ct.Rev. 207, 220–23. Professor Langbein argues that *Firestone* simply invited drafters of employee benefit plans to insert boilerplate language in plan documents to ensure that courts will apply a deferential standard of review over the decisions of the plan administrator.

Referencing the Court's statement in *Firestone* that an administrator's conflict of interest should be weighed by the court as a factor in determining whether there was an abuse of discretion, Professor Langbein has commented: "the Supreme Court appears to invite the use of a conflict-sensitive standard ... once plan drafters have inserted the necessary boilerplate to claim deferential review." *Id.* at 222. We agree. However, the deferential standard of review adopted in *Firestone* as the general rule where a plan includes language giving the administrator discretion to make eligibility determinations may

## B.

The district court's decision that Hoffmann's discontinuation of Abnathya's benefits was arbitrary and capricious was based on two conclusions. First, the court concluded that "the committee specifically and exclusively based its determination on an assessment of plaintiff's orthopedic condition," and therefore failed to give adequate consideration to Abnathya's thyroid condition as an additional basis for LTD benefits. Second, the court stated that Hoffmann arbitrarily failed to give adequate consideration to Abnathya's contention that the evaluations of Drs. Canario and Greifinger were cursory and inaccurate.

■ Neither of these conclusions is supported by the record. Although there is evidence in the record that Abnathya suffers from hyperthyroidism, that condition was not the basis for Abnathya's original LTD benefits claim. Nor does the record indicate that Abnathya ever claimed to the Committee that her thyroid condition was the basis for her continuing total disability. The Plan requires participants to submit evidence to substantiate eligibility for continuing benefits, see supra n. 2, but Abnathya has never submitted evidence that her thyroid condition causes total disability. The Plan also provides that "total disability" does not include "any injury or sickness for which a Member is not treated by a duly certified physician as determined by the Committee." But all of the physicians whose evaluations formed the basis for the Committee's decision, including Abnathya's treating physician, are orthopedic specialists. Accordingly, there is no basis for the district court's conclusion that Hoffmann unreasonably failed to consider Abnathya's hyperthyroidism as a basis for LTD benefits.

In its Letter–Order and Opinion Denying Defendant's Motion for Reconsideration, the district court stated:

> Perhaps this court's suggestion that the thyroid condition was the basis for the plaintiff's disability was too strongly stated.... However, defendant does not dispute that plaintiff had a history of such a condition and its symptoms. Nor does defendant dispute that neither Dr. Canario or Dr. Greifinger accounted for this condition, its symptoms, or plaintiff's relevant complaints in their reports. Given plaintiff's complete file and plaintiff's counsel's letter to the Committee challenging the absence of further assessment of plaintiff's thyroid condition, the Committee was on notice that plaintiff had additional thyroid symptoms and/or relevant health complications which were not addressed in Drs. Canario and Greifinger's reports.

Hoffmann argues that the district court effectively placed the burden on Hoffmann to investigate Abnathya's thyroid condition as a possible basis for LTD benefits and that this was error. We agree. As we have explained, the Plan clearly places the burden on the *claimant* to submit medical evidence to support eligibility for benefits. Thus, it was up to Abnathya, not Hoffmann, to substantiate a claim that her hyperthyroidism caused total disability. *See Miller*, 925 F.2d at 985 (where terms of employee benefits plan required claimant to supply proof of continuing disability and where claimant failed to provide such proof, it was not unreasonable for plan administrator to terminate benefits). Accordingly, we conclude that the district court erred in holding that Hoffmann's failure to consider disabling conditions other than Abnathya's orthopedic condition was an abuse of discretion.

■ The district court's other reason for concluding that Hoffmann abused its discretion in discontinuing Abnathya's benefits— that the Committee failed to give adequate consideration to the questions raised by Abnathya regarding the adequacy of the evaluations of Drs. Canario and Greifinger—is also unsupported by the record. First, there is nothing in the record to suggest that the Committee did not consider Abnathya's objections regarding the adequacy of the two

---

still have left employees largely unprotected from overreaching by employers who act as the administrators of their own plans, thereby thwarting ERISA's purpose of protecting plan participants from abusive management. *See id.* at 223.

Perhaps the Supreme Court will have an opportunity to reconsider this issue. Or perhaps Congress will consider amending ERISA to require more stringent review where an employer acts as its own plan administrator.

evaluations. To the contrary, the uncontested sworn testimony of David Alpert, Assistant General Counsel of Hoffmann; Lena Ballapianta, Manager of Benefits–Welfare Plans at Hoffmann and a member of the Committee; and Lynn Curreli, a benefits analyst at Hoffmann, was that Hoffmann *did* consider Abnathya's concerns regarding the thoroughness of the Canario and Greifinger evaluations, but concluded that the evaluations were adequate. Moreover, Hoffmann's letter to Abnathya in October of 1990 explaining its decision to affirm the discontinuation of her benefits specifically mentions in its opening sentence the letters she and her counsel sent to Hoffmann in August of 1990, both of which contended that the Canario and Greifinger evaluations were inadequate. In short, the evidence is undisputed that the Committee considered Abnathya's arguments regarding the inadequacy of the Canario and Greifinger examinations.

Furthermore, Abnathya submitted no evidence to support her allegation that the two evaluations were inadequate or unreliable. There is no provision in the Plan requiring that medical examinations relied on by the Committee for eligibility determinations be of a specific nature or length. Even if Abnathya could show that Dr. Canario's two-page evaluation, because of its brevity, was below the standards in the profession (and Abnathya has not submitted any evidence to show this), Dr. Greifinger's significantly more detailed evaluation, which comes to the same conclusion (that Abnathya is not totally disabled), provides adequate support by itself for Hoffmann's decision to discontinue benefits.[6]

■ We note that Hoffmann was not required by the Plan to provide a *second* medical evaluation, *see supra* n. 2, but did so voluntarily after Abnathya questioned the reliability of Dr. Canario's evaluation. In *Miller,* the Court of Appeals for the Sixth Circuit held that it was not arbitrary and capricious for a plan administrator to terminate disability benefits based on a *single* independent examination by a physician designated by the administrator, without providing a second examination, as had been requested by the plaintiff-participant. 925 F.2d at 985. The court found that under the applicable benefits plan, the administrator was not specifically required to request an additional examination unless the employee first submits proof of continuing disability. *Id.; see also Roberson v. General Motors Corp.,* 801 F.2d 176 (6th Cir.1986) (plan administrator's reliance on conclusion of board-certified internist that plaintiff was not mentally disabled, without referring claimant for further evaluation to a psychiatrist, not an abuse of discretion). Hoffmann's reliance on *two* independent evaluations, both of which came to the same conclusion that Abnathya was able to perform gainful employment, where the Plan did not require a second evaluation, was clearly not unreasonable.

We note also that Dr. Leonhardt's 1988 evaluation of Abnathya, ordered by Hoffmann as part of the two-year review of Abnathya's eligibility for the LTD benefits, also supports the Committee's decision to discontinue benefits. In that report, Dr. Leonhardt concluded that Abnathya is "able to do work of a sedentary nature, while seated, since there is no disability related to the upper extremities."

Finally, other than the conclusory note from Abnathya's treating physician, stating only that, in his opinion, Abnathya was still

---

6. For example, after providing a detailed summary of the history of Abnathya's orthopedic disability, Dr. Greifinger's evaluation states:

The cervical spine was with a well preserved lordosis. There was no focal spasm or tenderness to palpation about the paravertebral musculature. The compression and distraction tests were both negative. Motions of the cervical spine were with a complete arc in forward flexion, extension, lateral flexion and rotation. There was no associated pain.

The shoulders revealed a complete arc of glenohumeral and scapulothoracic motion....

The right hip had 90 degrees of internal rotation and 45 degrees of external rotation. The left hip had satisfactory motions. There was evidence of a 3 cm leg length discrepancy with the right greater than the left.

Straight leg raising was negative bilaterally. Motor examination of the right was satisfactory. The left was flaccid.

The right knee had medical and lateral scars. These apparently were from epiphysiodesis. There was no evidence of an effusion, the ligaments were without gross laxity.

totally disabled and unable to perform any gainful activities, Abnathya submitted no medical evidence to the Committee to substantiate her claim of continuing total disability, as is required of her under the Plan.[7] Although Abnathya was on notice of the Committee's initial denial of benefits as of at least August 5, 1990 (the date of her letter requesting that the Committee review its decision), and was notified in mid-August that her appeal would be considered on September 6, 1990, she did not submit additional evidence to support her claim of continued total disability until long after her appeal was decided.[8]

Under the arbitrary and capricious standard, the court must defer to the administrator unless it is clear that the decision is not supported by the evidence in the record or that the administrator has failed to comply with the procedures required by the plan. *See LeFebre v. Westinghouse Elec. Corp.,* 747 F.2d 197 (4th Cir.1984) (reversing district court's conclusion that administrator's denial of disability benefits was arbitrary and capricious where substantial evidence supported conclusion that plaintiff was not totally disabled). In this case, the evidence in the record—namely, the two independent medical evaluations concluding that Abnathya was not totally disabled—clearly supports the Committee's decision. Moreover, there is no evidence that the Committee acted in violation of any specific requirement of the LTD Plan.

For these reasons, we conclude that the district court erred in granting summary judgment in favor of Abnathya, and its judg-

ment will be reversed. Further, because the record is devoid of evidence that Hoffmann's decision to discontinue Abnathya's benefits was arbitrary and capricious, we will order that summary judgment be entered in favor of Hoffmann.

---

7. Dr. Birotte's note, dated August 14, 1990, states in full:

To whom it may concern:
RE: Aline Abnathya
Dear Sir/Madam:
This is to certify that the above named patient has been under my professional care from 7/26/85 until present.
DIAGNOSIS: Bilateral flacid [sic] paralysis secondary to poliomyleities [sic].
As a physiological unit patient is not able to perform any gainful activities.
If you have any questions please contact the office.
/s/ Dr. Andre Birotte
Dr. Birotte's earlier semi-annual statements submitted to Hoffmann in support of Abnathya's continuing total disability were similar.

8. Abnathya argues that the three additional medical evaluations submitted to Hoffmann in February of 1991 support her claim of continued disability. However, none of these evaluations were submitted until months after the Committee's final decision to affirm the discontinuation of Abnathya's benefits. Thus, these evaluations cannot be considered by the court in deciding whether the discontinuation of Abnathya's benefits was arbitrary and capricious. *See Miller v. Metropolitan Life Ins. Co.,* 925 F.2d 979, 986 (6th Cir.1991) (in reviewing a final decision of a plan administrator, the court may consider only evidence that was in the administrative record).