

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-21-2007

# DeLong v. Aetna Life Ins Co

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1879

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"DeLong v. Aetna Life Ins Co" (2007). *2007 Decisions.* Paper 1081.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1081

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 06-1879
_____

JOHN DELONG,

Appellant
v.

AETNA LIFE INSURANCE COMPANY

_____

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Civ. No. 05-cv-03371)
District Judge: Honorable Cynthia M. Rufe

_____

Submitted Under Third Circuit LAR 34.1(a)
APRIL 20, 2007
Before: SLOVITER, MCKEE AND AMBRO, CIRCUIT JUDGES

(Filed May 21, 2007)
_____

OPINION
_____

PER CURIAM

John DeLong sued Aetna Life Insurance Company ("Aetna"), claiming that Aetna

improperly terminated his disability benefits.[1]  Aetna moved for summary judgment,

_____

[1] DeLong originally termed his cause of action a breach of contract.  However, as
Aetna pointed out in its answer to the complaint, DeLong's claim is properly
characterized as a claim for denial of benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B).

which the District Court granted.  DeLong appeals.

We exercise jurisdiction under 28 U.S.C. § 1291.  Our review is plenary, including our consideration of whether the District Court employed the proper standard to review Aetna's disability determination.  See Abramson v. William Paterson College, 260 F.3d 265, 275 (3d Cir. 2001); Ellis v. Liberty Life Assur. Co., 394 F.3d 262, 269 (5th Cir. 2004).

We first hold that the District Court did not err in reviewing Aetna's denial of DeLong's claim for abuse of discretion or for an arbitrary and capricious decision.  An arbitrary and capricious standard applies if a plan gives an administrator discretion in making eligibility decisions, unless the person challenging the decision shows that the exercise of discretion has been tainted by a conflict of interest or otherwise. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Gillis v. Hoechst Celanese Corp., 4 F.3d 1137, 1141 (3d Cir. 1993); Kostrosits v. GATX Corp. Non-Contributory Pension Plan for Salaried Employees, 970 F.2d 1165, 1173 (3d Cir. 1992). The parties agree that the plan at issue gives Aetna discretionary authority to decide claims, and DeLong raises no inference of a conflict of interest.[2]  DeLong maintains,

DeLong did not challenge the characterization of his claim in the District Court, and now describes his claim as one under § 1132(a)(1)(B) (Appellant's Brief 19).

[2]We reject DeLong's claim (Appellant's Brief 27) that Aetna had some ulterior motive or "beneficial interest" in stopping disability payments to DeLong.  As DeLong concedes, Aetna administered the plan while his former employer funded it.  (Appellant's Brief 29.)  Accordingly, the heightened scrutiny required when a company both funds and administers benefits, see Pinto v. Reliance Std. Life Ins. Co., 214 F.3d 377, 387 (3d Cir.

2

however, that Aetna's decision was arbitrary and capricious.

We conclude, however, that Aetna's decision to terminate DeLong's disability payments was not arbitrary and capricious. Under the arbitrary and capricious standard of review, a court may overturn the decision of a plan administrator only if it is "'without reason, unsupported by substantial evidence, or erroneous as a matter of law.'" Abnthya v. Hoffman-LaRoche, Inc., 2 F.3d 40, 45 (3d Cir. 1993) (citations omitted). The narrow scope of review disallows a court from substituting its own judgment for a rational decision made by the plan administrator. See id. We evaluate the decision to deny benefits against the record available to the plan administrator. See Koshiba v. Merck & Co., 384 F.3d 58, 69 (3d Cir. 2004).

As the District Court noted, the plan administrator was faced with conflicting evidence regarding DeLong's disability. DeLong's treating physician diagnosed him as permanently disabled because of multiple herniations, bulging discs, stenosis, oesteophytes, body impingement, and torn menisci. (Supp. App. 00308-11.) He noted that DeLong was unable to sit, stand, or walk for more than 15 minutes, and that DeLong could not climb, squat, or kneel. (Id. at 00310.) DeLong reported "pretty constant pain" and the inability to sit or stand for a long time. (Id. at 00317-18, 00342.) He stated that he used one cane at home and two canes outside his residence. (Id. at 00341.) DeLong noted that he could walk for about 15 minutes at a time, stand, ascend and descend stairs,

2000), is unwarranted.

3

occasionally bend at the waist in moderation, and drive. (Id. at 00342-43.) Orthopedists whom DeLong consulted for back and leg pain concluded that DeLong suffered from a combination of degenerative disc disease and spinal stenosis, as well as severe degenerative joint disease of the knees. (Id. at 00377-83, 00402.) The doctor reviewing DeLong's MRI results for one orthopedist determined that DeLong suffered from "degenerative discogenic changes of the lumbar spine with spinal stenosis demonstrated at multiple levels." (Id. at 00384.)

Aetna engaged the services of an investigator to conduct surveillance on DeLong. On four days in June 2004, an investigator staked out DeLong's home and otherwise observed his activities. (Supp. App. 00345-54.) On one day, the investigator did not find DeLong at his home in Philadelphia. (Id. at 00346-47.) Told by a neighbor that DeLong had a family home in Wildwood, New Jersey, the investigator looked there, but to no avail. (Id.) On the second day of surveillance, the investigator did not see DeLong, and assumed that DeLong was confining his activities to his residence. (Id. at 00347-48.) However, on the third day, the investigator watched DeLong walk from his home to his car, drive approximately 100 miles to Wildwood, exit his vehicle, walk along the side of, and to the entrance of, the shore home without braces or orthopedic support. (Id. at 00348-50.) When DeLong left the home and got into his car, and on DeLong's return, the investigator obtained three minutes of surveillance video. (Id. at 00349-50.) On the following day, the fourth and last day of surveillance, the investigator observed DeLong

4

sitting on his front porch, moving his arms and hands and occasionally bending from the waist while he spoke to two visitors, and briefly standing twice, once lifting his right leg to place his foot on his chair, and once lifting his left leg to place his foot on the arm of the chair, before sitting again. (Id. at 00351.) The investigator also saw DeLong, without braces, orthopedic support, or apparent difficulty, walking from his porch to his car, standing in different positions on his porch, at one point swinging his hips from front to back, walking to the back of the house, and climbing and descending the outside staircase of another residence. (Id. at 00351-54.) The investigator videotaped DeLong for 21 minutes. (Id. at 00354.)

In denying benefits to DeLong, Aetna relied on the observations of its investigator as well as an independent medical evaluation by Dr. Carl Huff. After reviewing DeLong's medical records and Aetna's investigative report, Huff described DeLong's spinal stenosis as "an imaging phenomenon that does not correlate with any indication of neural compression, nor any neural involvement, or any sciatic pain attributable to these imaging findings." (Supp. App. 00414.) Comparing DeLong's descriptions of his symptoms against his doctors' findings, as well as DeLong's ability to ambulate easily and drive for two hours without apparent difficulty, Huff concluded that "there is no indication that [DeLong] has suffered any neurologic consequence that would make him functionally disabled to work." (Id. at 00415.)

In sum, although the evidence of DeLong's disability cut both ways, Aetna did not

act arbitrarily or capriciously when it denied DeLong's claim in reliance on Huff's review of the record and its own surveillance reports, including short segments of videotaped footage. Among other things, Huff concluded that DeLong described his symptoms in a manner inconsistent with the results of medical examinations and observed activities. Also, the findings of investigative report, including the videotaped surveillance, contradicted DeLong's primary physician's characterization of DeLong's physical infirmaties, as well as some of DeLong's own statements about the severity of his disability. Therefore, Aetna's decision was not irrational or unsupported.

Lastly, we reject DeLong's argument that his constitutional rights were violated because his claim was decided on summary judgment instead of after a trial.[3] "[A] litigant is not 'deprived' of a trial . . . upon grant of summary judgment when the evidence of record at the time of the motion supports its opponent on all key issues and the nonmovant fails to put in sufficient evidence to create a triable issue of material fact." Avia Group Int'l, Inc. v. L.A. Gear California, Inc., 853 F.2d 1557, 1561 (Fed. Cir. 1988).

For the foregoing reasons, we will affirm the District Court's judgment.

---

[3]To the extent that DeLong incorporates an argument that he was entitled to a jury trial under the Seventh Amendment, we note that he brought an equitable cause of action for which there is no right to a jury trial. See Pane v. RCA Corp., 868 F.2d 631, 636 (3d Cir. 1989). We also note that we have held that a Seventh Amendment right to a jury trial is not violated by summary judgment "so long as the person having the right to the jury trial is an actual participant in the summary judgment proceeding." In re TMI Litig., 193 F.3d 613, 725 (3d Cir. 1999). (citations omitted).