**Dennis SADDLER, Appellant**

v.

**ELLIOTT COMPANY.**

**No. 09–1476.**

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit
LAR 34.1(a) Dec. 14, 2009.

Filed: Dec. 21, 2009.

Brian P. Bronson, Esq., Quatrini, Rafferty & Galloway, Greensburg, PA, for Appellant.

Samantha L. Brutout, Esq., Walter A. Bunt, Jr., Esq., K & L Gates, Pittsburgh, PA, for Elliott Company.

Before: SLOVITER, JORDAN and WEIS, Circuit Judges.

## OPINION

SLOVITER, Circuit Judge.

Appellant Dennis Saddler ("Saddler") appeals from the District Court's order granting summary judgment for Elliott Company ("Elliott"), his former employer, on his claim for benefits allegedly due under the Employee Retirement Income Security Act of 1974 ("ERISA") (as amended), 29 U.S.C. § 1132(a)(1)(B). Saddler asserts that he is entitled to severance pay pursuant to the Elliott Company Severance Plan (the "Plan"). We will affirm.[1]

### I.

As the parties submitted a Joint Statement of Facts for purposes of their cross-motions for summary judgment, the relevant facts are not in dispute. Saddler is a participant in the Plan which is administered under ERISA. Saddler worked at Elliott as a project engineer for thirty-two years, the latter part of his tenure in El-

---

1. The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331. Our jurisdiction to review the District Court's final order arises under 28 U.S.C. § 1291.

liott's Plant Air Packaging Group (the "PAP Group"). In early September 2003, Elliott entered into an Asset Purchase Agreement to sell the assets of the PAP Group to another entity, F.S. Elliott Company ("F.S.Elliott").

Before the sale was complete, Elliott managers held meetings with employees of the PAP group who would be "transferred" to F.S. Elliott to tell them "that they were not being laid off." App. at 45. Saddler was transferred to F.S. Elliott, where he had the same job responsibilities, and worked for the same or better salary, out of the same building, at the same desk, and with the same telephone number. Five months after the transfer, Saddler resigned from F.S. Elliott.

Then, in September 2006, more than two years after he resigned and nearly three years after the transfer, Saddler sought severance pay from Elliott. Elliott's written Severance Pay Policy allows payment at Elliott's discretion to employees who lose their job under three circumstances: (1) a decline in business; (2) plant closing; or (3) a technology improvement. Elliott denied Saddler's claim for severance pay. Two months later, Saddler appealed Elliott's denial of his request for severance pay, arguing that his job at Elliott "was eliminated due to the plant closure/sale" to F.S. Elliott. App. at 48. Elliott denied Saddler's appeal, finding that Saddler did not lose his job and that the PAP Group never closed.

The District Court concluded that Elliott's interpretation of the phrase "job loss" under the Plan was not arbitrary and capricious as it applied to Saddler.[2] The

District Court so found after taking into consideration Elliott's inherent financial interest in denying Saddler severance pay. It accordingly granted summary judgment for Elliott and denied Saddler's motion for summary judgment. We exercise plenary review over the District Court's decision to grant summary judgment.

## II.

As we explained in *Doroshow v. Hartford Life and Accident Insurance Company*, 574 F.3d 230, 233–34 (3d Cir.2009), the Supreme Court recently clarified the appropriate standard trial courts must apply when reviewing denials of benefits under ERISA § 1132(a)(1)(B). *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008). If the administrator of a benefits plan has discretion to determine eligibility for benefits, as Elliott did here, the denial of benefits is to be reviewed under an arbitrary and capricious standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). We have held that an arbitrary and capricious standard of review in this context is "essentially the same as the 'abuse of discretion' standard." *Abnathya v. Hoffmann–La Roche, Inc.*, 2 F.3d 40, 45 n. 4 (3d Cir.1993) (internal citation omitted). However, reviewing courts must weigh as a factor the inherent conflict of interest presented when the same party pays benefits and determines eligibility. *See Glenn*, 128 S.Ct. at 2350. The District Court correctly applied these standards when it reviewed Elliott's denial of Saddler's claim for severance pay.

In analyzing the merits of Saddler's request for severance pay, the District Court

---

**2.** Also, the District Court found Elliott's interpretation of the phrase "plant closing" to be "inconsistent with [its] conduct under the Plan," because Elliott had provided severance pay to the PAP Group employees who were not transferred from Elliott to F.S. Elliott. App. at 12. The District Court reasoned that,

since there was no evidence of a decline in business or a technology improvement when it occurred, Elliott treated the transfer of the PAP Group as a plant closure. We need not decide that issue because we find another disposition.

**418**

first determined that the term "job loss" is ambiguous under the terms of the Plan because it could be interpreted reasonably in two ways. Nonetheless, the Court held the Plan did not compel Elliott to follow the interpretation most favorable to the employee because such an interpretation would eviscerate the administrator's discretion, in contravention of *Glenn.* Thus, as *Glenn* mandates, the District Court weighed the conflict of interest as a factor, and reasoned that Elliott did not abuse its discretion in finding that Saddler suffered no job loss. We agree.

Elliott managers told Saddler that he was not being laid off before the transfer from Elliott to F.S. Elliott. Saddler missed no work after the transfer. On the contrary, he sat at the same desk with the same job responsibilities, telephone number, same or better salary, and became unemployed only when he voluntarily resigned from F.S. Elliott. In light of those stipulated facts, Elliott did not act in an arbitrary or capricious manner in concluding that Saddler did not suffer a job loss.

Moreover, the District Court searched the record and found that "there are no facts of record—other than the potential conflict itself—that any potential conflict of interest influenced Elliott's decision...." App. at 14. Such analysis accords with *Glenn.* *See* 128 S.Ct. at 2351 (holding that trial courts must give a conflict of interest greater weight when "circumstances suggest a higher likelihood that it affected the benefits decision . . . .").

### III.

For the above-stated reasons, we will affirm the District Court's order granting Elliott's motion for summary judgment.