NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 09-3329

MANUEL ARAUJO,
Appellant

v.

KRAFT FOODS GLOBAL, INC., Administrative Committee

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 08-00843)
Honorable William J. Martini, District Judge

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 25, 2010

BEFORE: SMITH, FISHER, and GREENBERG, Circuit Judges

(Filed: July 23, 2010)

OPINION OF THE COURT

GREENBERG, Circuit Judge.

I. INTRODUCTION

This matter comes on before the Court on an appeal from an order entered in the District Court on July 7, 2009, granting defendant Kraft Foods Global, Inc., Administration Committee's ("the Kraft Committee" or "Committee") motion for summary judgment and dismissing plaintiff Manuel Araujo's complaint in this ERISA case with prejudice. For the reasons set forth below, we will affirm the order of the District Court.

## II. BACKGROUND

A. Facts

Araujo worked for Nabisco, Inc. as a warehouse worker continuously from 1970 until 2000 when Kraft Foods Global, Inc. purchased Nabisco. Thereafter, Araujo worked for Kraft until 2001 for a total of 31 years of continuous employment at the two companies.

Nabisco automatically enrolled its employees in its Plan for Pensions. When Kraft purchased Nabisco it took over Nabisco's Plan for Pensions including the Plan's assets and obligations. The Plan had several pension options including a Job Elimination Retirement Pension ("JERP"). The Plan provided that a participant was eligible for a JERP if he had "10 or more Vesting Years of Service, [] is at least age 55 and [] has a Termination of Employment due to job elimination." App. at 101. In addition to the formal Plan document setting forth its provisions, Nabisco provided a Summary Plan Description ("SPD"). Kraft, when acquiring Nabisco and its Plan for Pensions, did not

2

change the SPD. The SPD, in language somewhat different from the formal Plan document, described a JERP as a pension applicable "[i]f your employment is terminated due to job elimination and you are at least age 55 and have completed at least 10 years of Vesting Service." App. at 86. In addition the SPD provided that "[a JERP] is payable monthly for life to Participants who retire as result of the elimination of their job and who are at least age 55 with 10 years of Vesting Service." Id. at 83. The SPD introduction stated that in the event of a conflict between the SPD and the Plan the terms of the Plan would control.

After the acquisition, the Kraft Committee assumed the duties and obligations that previously had been the responsibility of the Nabisco, Inc. Benefits Committee with respect to administration of the Plan. Thus, the Kraft Committee became responsible for making pension eligibility determinations under the Plan.

In 2001 Kraft decided to close its distribution center in Teterboro, New Jersey, where it employed Araujo. Thereafter, Kraft and the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 560 ("the Union") negotiated and signed a Memorandum of Agreement dealing with the effects of the closing on Local 560's members. Under the agreement, Union members, Araujo included, could transfer their employment, with their seniority intact, to a distribution center in Edison, New Jersey, or could apply for employment at a Kraft distribution center in Montgomery, New York. Employees also could choose to retire and receive certain

3

severance payments including weekly severance pay for a calculable period and a lump sum settlement payment of $9,000. The Memorandum of Agreement included a "Bridging Provision," which enabled employees close to meeting the requirements for a JERP who chose to terminate their employment to spread their severance pay for up to two years in order to meet the age or years of vesting service requirement for a JERP. Araujo chose to retire and receive severance payments without adjustment for the Bridging Provision.[1] If Araujo had chosen to spread his severance pay under the Bridging Provision, he nevertheless only would have reached age 53 rather than age 55 as required for JERP eligibility. His termination was effective November 1, 2001, but because of his election to retire he continued to receive his wage payments until June 7, 2002.

In September 2002, Araujo received information from Kraft concerning his pension eligibility. He was eligible to receive either a Vested Pension upon reaching age 65 or a Deferred Vested Pension ("DVP") beginning at age 55. Under the DVP, Araujo would receive smaller payments than he would have been paid if he elected to receive a Vested Pension, an adjustment reflecting the earlier starting date for pension payments under the DVP. It is obvious that at that time Araujo questioned whether he had other pension options for his counsel wrote a letter to Kraft inquiring why he was ineligible for a JERP which provided more generous payments than a DVP. So far as the record

---

[1] Araujo signed a settlement agreement and general release that provided for a lump sum payment to him of $9,000 in settlement of pending arbitration claims and by which he waived any right to future employment by Kraft.

4

reveals Kraft did not respond to his letter.[2] Araujo opted to receive the DVP and began receiving pension payments on April 1, 2004.[3] He then filed an internal claim requesting that the Kraft Committee adjust his pension from a DVP to a JERP on the basis of his belief that he was eligible for a JERP even though he was not 55 years old at the time of his termination. The Committee denied the claim initially and then on appeal even though it acknowledged that the language of the SPD, though in its view not in conflict with the Plan, was not entirely clear.

B.    Procedural History

Araujo filed this action on February 15, 2008, against the Kraft Committee in the District Court claiming that the SPD was misleading because it did not state clearly that an employee had to be 55 years old at the time of the job elimination to be eligible for a JERP. Araujo contends that because the SPD was misleading it led him to accept the termination severance package rather than to transfer to another Kraft facility when Kraft eliminated his position. Araujo contends that Kraft should be estopped from asserting that he was not entitled to a JERP and that Kraft breached its fiduciary duty when it acquired Nabisco by continuing in effect the misleading SPD that Nabisco had issued. The District Court rejected the first ground of the complaint as it found that Araujo was unable to establish the presence of equitable estoppel under ERISA. In this regard Kraft

---

[2] Kraft has been unable to determine if it replied to the letter, and, if not, why not.

[3] That date was the first day of the month following Araujo's 55th birthday.

5

conceded for summary judgment purposes that Araujo satisfied the first two requirements

for a showing of equitable estoppel: Kraft's material representation and Araujo's

reasonable and detrimental reliance on the representation. But the District Court found

that Araujo did not satisfy the third and final requirement for equitable estoppel: the

presence of extraordinary circumstances justifying its application. The extraordinary

circumstances that Araujo advanced were that the SPD was ambiguous and he was

foreign born with a limited knowledge of English. The District Court rejected the second

ground of the complaint, which charged that Kraft had breached its fiduciary duty, as the

Court found that Kraft had not breached that duty because it had not made an affirmative

misstatement and its determination with respect to Araujo's pension eligibility was

reasonable. After the District Court granted summary judgment in favor of the

Committee on both counts, Araujo filed this timely appeal.

## III. JURISDICTION AND STANDARD OF REVIEW

Araujo sought review in the District Court pursuant to 29 U.S.C. § 1132(a)(1)(B)

"to recover benefits due to him under the terms of his plan, to enforce his rights under the

terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

The District Court had subject matter jurisdiction under 28 U.S.C. § 1331. We have

jurisdiction to review the final summary judgment order of the District Court pursuant to

28 U.S.C. § 1291 and exercise plenary review of its summary judgment order. See Santos

6

ex rel. Beato v. United States, 559 F.3d 189, 193 (3d Cir. 2009).

## IV.  DISCUSSION

Araujo claims that the District Court erroneously found he did not satisfy the extraordinary circumstances requirement, the elements of which we explain below, to justify the application of equitable estoppel under ERISA § 502(a)(3).  Araujo also challenges the Court's finding that Kraft did not breach its fiduciary duty by continuing in effect a misleading SPD when it acquired Nabisco.

### A.    The Equitable Estoppel Claim

Equitable estoppel is available to support a cause of action under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).  To maintain a cause of action dependent on equitable estoppel of a defendant a "plaintiff must establish (1) a material representation, (2) reasonable and detrimental reliance upon the representation and (3) extraordinary circumstances."  Burstein v. Ret. Account for Employees of Allegheny Health Educ. and Research Found., 334 F.3d 365, 383 (3d Cir. 2003) (quoting Curcio v. John Hancock Mut. Life Ins. Co., 33 F.3d 226, 235 (3d Cir. 1994)).  But to be successful on an ERISA claim dependent on the application of equitable estoppel, a plaintiff must do more than establish that the basic elements for equitable estoppel are present.  Kurz v. Phila. Elec. Co., 96 F.3d 1544, 1553 (3d Cir. 1996) (citing Gillis v. Hoechst Celanese Corp., 4 F.3d 1137, 1142 (3d Cir. 1993)).  Inasmuch as ERISA does not define explicitly "extraordinary

7

circumstances," case law establishes the phrase's parameters. Curcio, 33 F.3d at 237.

Generally, extraordinary circumstances arise from conduct involving "acts of bad faith on the part of the employer, attempts to actively conceal a significant change in the plan, or commission of fraud." Burstein, 334 F.3d at 383 (quoting Jordan v. Fed. Express Corp., 116 F.3d 1005, 1011 (3d Cir. 1997)). There also may be extraordinary circumstances attributable to a defendant's repeated misrepresentations or a plaintiff's particular vulnerability. Kurz, 96 F.3d at 1553 (citing Curcio, 33 F.3d at 238). Not surprisingly in light of these heightened requirements, we have "consistently rejected estoppel claims based on simple ERISA reporting errors or disclosure violations, such as variations between a plan summary and the plan itself." Id. (citing Gillis, 4 F.3d at 1142). We conclude here that Araujo has not established that there are extraordinary circumstances satisfying the heightened requirements standard.

We recognize that Araujo contends that his status as a Portuguese immigrant combined with his limited knowledge of English makes him particularly vulnerable and that these circumstances were sufficient to constitute extraordinary circumstances. However, we never have found immigrant status to be sufficient to establish an extraordinary circumstance in an ERISA context similar to that here. Generally, we find that there are extraordinary circumstances based on a plaintiff's particular vulnerability only in instances of imminent and life threatening health emergencies to the plaintiff himself or to his family members. See Smith v. The Hartford Ins. Group, 6 F.3d 131 (3d

8

Cir. 1993) (plaintiff who had suffered a cerebral hemorrhage considered vulnerable); see also Curcio, 33 F.3d 226 (plaintiff whose husband died in a car accident but suffered no injury herself qualified as vulnerable).

Notwithstanding our exacting definition of extraordinary circumstances, Araujo maintains that the District Court erred in rejecting his contention that there were extraordinary circumstances present here justifying his claim. In support of his contention he cites Curcio in which the plaintiff, whose husband died in a car accident, did not herself suffer any injury but in which we nevertheless found that there were extraordinary circumstances justifying the application of estoppel against the defendant in the plaintiff's ERISA claim case against it. Araujo asserts that if emotional suffering is enough to create "vulnerability," then immigrant status also should be sufficient. However, in Curcio, the plaintiff was not rendered vulnerable simply by virtue of her compromised emotional state. The defendant in Curcio, Capital Health, made continuous misrepresentations over an extended period of time which, for reasons independent of her emotional suffering, could establish an exceptional circumstance. Curcio, 33 F.3d at 238 (as cited in Kurz, 96 F.3d at 1553); see also Smith, 6 F.3d at 142 (extraordinary circumstances existed where defendant made repeated misrepresentations to plaintiff who had suffered from a cerebral hemorrhage and required intensive care).

Unlike the situation in Curcio and Smith, the facts on which Araujo relies to support the extraordinary circumstances component of his equitable estoppel claim are

9

not recent. Araujo has been in the United States for over 30 years and has his son's assistance when reading English documents. Furthermore, there are no facts suggesting Araujo's immigrant status has rendered him especially vulnerable. We find no reason to extend exceptional circumstances to encompass immigrant status in this instance.

In addition to claiming that his immigrant status can establish an extraordinary circumstance, Araujo asserts that Kraft engaged in inequitable conduct that establishes an extraordinary circumstance. However, Araujo has not pleaded any acts of bad faith, intentional concealment, or fraud constituting inequitable conduct. He claims that Kraft could have corrected the ambiguity in the SPD that led him to believe that he was eligible for a JERP and its failure to do so is inequitable conduct.[4] This argument, however, is unavailing and we will discuss it further under the next issue. Given that Araujo has not pled acts of bad faith, intentional concealment, or fraud and that we consistently have rejected claims based on variations in the plan description summary from a plan, Araujo cannot establish that there are exceptional circumstances here due to Kraft's inequitable conduct.

---

[4]Araujo's contention that "Kraft and the Committee exhibited inequitable conduct by failing to cure the ambiguity inherent in the SPD," Appellant's br. at 8, seemingly is a free-standing claim. But Araujo also states in the section of his brief dealing with the "extraordinary circumstances requirement" for equitable estoppel that "Kraft had ample opportunity to amend both [the Plan and the SPD] after its acquisition of Nabisco," thereby suggesting that its failure to amend is an aspect of the extraordinary circumstances requirement for the application of equitable estoppel. Appellant's br. at 12. We are treating the failure to amend the SPD both ways, i.e. as a free-standing claim and as part of the equitable estoppel claim.

B.    The Breach of Fiduciary Duty Claim

ERISA creates obligations for fiduciaries and allows plan participants a cause of action for breach of the fiduciary's obligations under a plan.  To establish a breach of fiduciary duty claim, "a plaintiff must establish each of the following elements: (1) the defendant's status as an ERISA fiduciary acting as a fiduciary; (2) a misrepresentation on the part of the defendant; (3) the materiality of that misrepresentation; and (4) detrimental reliance by the plaintiff on the misrepresentation."  Burstein, 334 F.3d at 384 (quoting Daniels v. Thomas & Betts Corp., 263 F.3d 66, 73 (3d Cir. 2001)).  Kraft's status as a fiduciary is not at issue, but the District Court found that Kraft had not made a misrepresentation.  Therefore, the Court did not address the final two elements of a breach of fiduciary duty claim.  The crux of this appeal rests on the second element of that claim, i.e. whether Kraft made a misrepresentation.

1.    Misrepresentation on the Part of the Defendant

In the event of a conflict, the SPD controls.  Burstein, 334 F.3d at 378.  ERISA requires that an SPD be written so as to be understood by the average plan participant and "shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan."  Id. at 379 (quoting 29 U.S.C. § 1022(a)).  Nevertheless, a conflict is not necessarily created when an SPD is silent or fails to include certain terms of a plan.  Nash v. Mercedes Benz USA, 489 F. Supp. 2d 411, 416 (D.N.J. 2007).

11

Araujo maintains that the wording of the SPD is ambiguous, claiming that the positioning of the term "age 55," that we quoted above in the two portions of the SPD could be interpreted as either the age at time of the job elimination or the age at the time of retirement. But regardless of a possible ambiguity in the SPD, the wording of the Plan was not ambiguous. In the Plan the term "age 55" immediately precedes the termination reference and modifies it. In a letter to counsel dated September 20, 2005, the Committee acknowledged that "the SPD language was not as clear as the Plan document language regarding the requirement that the participant must be age 55 at the time of the job elimination." App. at 53. Nevertheless, the SPD is meant to summarize and not parrot the terms of the Plan as parroting would defeat the purpose of the SPD. Burstein, 334 F.3d at 379. Affirmative misrepresentations have been found in instances of direct conflict. Id. at 380 (affirmative conflict existed where the SPD did not possess a years of service requirement while the Plan required a five-year minimum term of service); Gors v. Venoy Palmer Mkt., Inc., 578 F. Supp. 365, 367 (E.D. Mich. 1984) (affirmative misrepresentation existed when the SPD stated pension would vest after five years while the Plan required ten).

In this case the difference between the Plan and the SPD is in the ordering of the elements of JERP eligibility. Even though it might have been prudent for Kraft to rewrite the SPD when it acquired Nabisco to state specifically that an employee must be 55 years old at the time of job termination for JERP eligibility, its failure to do so did not leave in

12

place an affirmative conflict between the Plan and the SPD. While the ordering of the Plan is clearer than the ordering of the SPD, a difference in clarity does not amount to a direct conflict and the District Court's finding that there was no conflict cannot be disturbed.

### 2. Arbitrary and Capricious Review

Under the arbitrary and capricious standard, a court may overturn an administrator's decision when it is not supported by the evidence or violates plan procedures. Abnathya v. Hoffman-La Roche, Inc., 2 F.2d 40, 41 (3d Cir. 1993). When evaluating an administrator's decisions regarding ERISA benefits the court "should apply a deferential abuse of discretion standard of review across the board and consider any conflict of interest as one of several factors in considering whether the administrator or the fiduciary abused its discretion." Estate of Kevin Schwing v. the Lilly Health Plan, 562 F.3d 522, 525 (3d Cir. 2009). Moreover, a court cannot substitute its own judgment for that of an administrator when evaluating eligibility. Abnathya, 2 F.2d at 45. Inasmuch as there was not an affirmative conflict between the SPD and the Plan, the District Court appropriately found that Kraft's interpretation of the Plan was reasonable.

Araujo contends that, by acquiring Nabisco and its assets and obligations under the Plan, Kraft had an incentive to reduce pension payments knowing that former Nabisco employees would opt to retire and receive higher JERP benefits. He contends that this incentive, in turn, created a structural conflict that he believes that the District Court

13

should have considered. Following this logic, Araujo argues Kraft's determination that he was ineligible for a JERP was arbitrary and capricious. But a court only can overturn an administrator's decision if it was "without reason, unsupported by substantial evidence or erroneous as a matter of law." Nash, 489 F. Supp. 2d at 418 (quoting McLeod v. Hartford Life and Accident Ins. Co., 372 F.3d 618, 623 (3d Cir. 2004)). Inasmuch as the SPD and the Plan do not affirmatively conflict, and the introduction to the SPD states that in matters of conflict the Plan will control, the Committee's determination was reasonable.[5] It is immaterial that the SPD could be interpreted another way; the Committee's interpretation need only be reasonable and supported by the evidence. Abnathya, 2 F.2d at 41, 45.

Additionally, the possible conflict of interest is only one factor in the evaluation and it is outweighed by other evidence supporting the denial of a JERP. If Kraft had been seeking to reduce pension payments, it would have been irrational for it to agree to the Bridging Provision as the Union and Kraft specifically designed the provision to help employees close to qualifying for a JERP to meet either the age 55 or 10 years vesting service requirements. Thus the Bridging Provision potentially increased the amount Kraft would expend in pension payments. Araujo asserts that the District Court should not have been persuaded by the Bridging Provision given that the provision just as easily could

---

[5] We are not concerned here with case law to the end that in the event of a conflict between a plan and an SPD the latter controls, see Burstein, 334 F.3d at 378, because there is not a conflict here.

14

apply to the term of service requirement. We recognize that inasmuch as Araujo had accumulated three times the service term than the required 10-year period for a JERP, he believed the Bridging Provision did not apply to him. But even if the Bridging Provision is interpreted to apply only to the years of vesting service requirement, it still would aid employees in obtaining JERP eligibility and increase pension payments. Absent additional evidence of fraud or misconduct, which Araujo has failed to provide, the District Court's judgment will stand.

## V. CONCLUSION

For the reasons set forth above, we will affirm the order of the District Court entered July 7, 2009, granting summary judgment in favor of the Kraft Committee. Araujo has failed to establish either that his immigrant status or Kraft's failure to modify the SPD creates an exceptional circumstance justifying the application of estoppel principles and therefore his claim predicated on equitable estoppel is insufficient. There is no affirmative conflict between the SPD and the Plan and therefore a claim of breach of fiduciary duty cannot be based on a claim of such a conflict. Based on this evidence, the Committee's determination that Araujo was ineligible for a JERP was reasonable, and the Court was right to uphold it.

15