NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 09-2965

MARK SALTZMAN, on behalf of himself
and all others similarly situated; JAN MEISTER

v.

INDEPENDENCE BLUE CROSS; QCC INSURANCE COMPANY;
KEYSTONE HEALTH PLAN EAST, INC.

Mark Saltzman; Jan Meister,

Appellants

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 08-cv-3849)
District Judge: Honorable Michael M. Baylson

Submitted Under Third Circuit LAR 34.1(a)
April 20, 2010

Before: SCIRICA and AMBRO, Circuit Judges, and JONES[*], District Judge

(Opinion filed: June 10, 2010)

_____

[*]The Honorable John E. Jones, III, United States District Judge for the Middle
District of Pennsylvania, sitting by designation.

---

OPINION

---

JONES, District Judge.

Mark Saltzman ("Saltzman") and Jan Meister ("Meister") (collectively, "Appellants") appeal the District Court's grant of Independence Blue Cross ("IBC"), QCC Insurance Company ("QCC"), and Keystone Health Plan East's ("KHPE") (collectively, "Appellees") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). We affirm.[1]

I.

Saltzman and Meister brought this action under ERISA to recover benefits from Appellees in the form of prescription drug copayment charges. Saltzman and Meister each subscribed to medical insurance plans, specifically the Select Drug Program at issue in this litigation, sold by IBC through its subsidiaries, QCC and KHPE. Saltzman's former employer, Gary Barbera Dodgeland, contracted with IBC, through KHPE, to provide insurance plans to its employees.[2] Meister was, at the time this litigation

---

[1]The District Court had jurisdiction of the matter pursuant to 28 U.S.C. § 1221 because this action arises under the Employee Retirement Income Security Act of 1974 ("ERISA") as amended, 29 U.S.C. §§ 1001-1461. Because Appellants appealed from a final decision, we have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

[2]After Saltzman's employment ended, he received prescription drug benefits through COBRA.

2

commenced, employed by Stanley Creations, Inc. Meister's employer contracted with IBC, through QCC, to provide insurance coverage to its employees. Both Appellants were covered under the same Select Drug Program.

Appellants' ERISA claims focus on the open formulary[3] found in their Select Drug Program.[4] This formulary placed prescription medication into three different tiers, and each different tier constituted a different copayment. Each Appellant was subject to following coverage: Tier 1- individuals pay the lowest copayment for generic drugs; Tier 2- individuals pay a greater copayment for brand-name drugs listed in the formulary; Tier 3- individuals pay the highest copayment for brand-name drugs not listed in the formulary. Specific to each Appellant, this structure translated into the following dollar amounts: $10 for Tier 1 drugs; $20 for Tier 2 drugs; and $35 for Tier 3 drugs.

---

[3]A formulary is a "listing of medications for which an insurer or managed care organization provides coverage." *Saltzman v. Independence Blue Cross*, 634 F. Supp. 538, 542 n. 2 (E.D. Pa. June 5, 2009) (quoting *J.B.D.L. Corp. v. Wyeth-Ayerst Labs, Inc.*, 485 F.3d 880, 884 (6th Cir. 2007)). A formulary can be "open" or "closed": an open formulary structure will pay for drugs that are not listed on the formulary, while a closed formulary will not extend coverage to the drugs that are excluded from the formulary.

[4]The formulary provided:

In an effort to continue our commitment to provide you with comprehensive prescription drug coverage, a formulary feature is included in your prescription drug benefit. A formulary is a list of select FDA-approved, prescription medications reviewed by the Futurescripts® Pharmacy and Therapeutics Committee. These prescription medications have been selected for their reported medical effectiveness, safety, and value while providing you with the highest level of coverage under your prescription program.

(Am. Compl. ¶ 74).

3

Both Saltzman's and Meister's plans consisted of two parts, which the District Court referred to as the "parent contract" and the Prescription Drug Rider. The "parent contract" for both provided information regarding the availability of prescription drug coverage, noted that the insurer may set a higher copayment for certain drugs, and indicated that the insurer may amend the terms of the plan. The Prescription Drug Rider similarly established the right to prescription drug coverage and indicated that the insurer retained the discretion to set higher copayments for certain drugs. A copy of the relevant drug formulary was also attached to each Appellant's plan. The formulary identified certain FDA-approved, prescription medications, and described how to identify which listed drugs were assigned to which copayment, based on whether the drug was "formulary generic", "formulary brand", or "non-formulary brand". Other relevant documents included a letter notifying of changes in the formulary, an IBC webpage, and an IBC newsletter.

Both Saltzman and Meister take the prescription drug Plavix for their medical conditions. Plavix is an antiplatelet prescription drug indicated for individuals with a high risk of heart attack, stroke, and circulation problems as a result of medical conditions. There is no generic equivalent of Plavix on the market. A six-month supply of a generic version was released in August 2006; however, the production of this generic version was later enjoined for patent infringement. Before the generic version was released, Plavix was characterized as a Tier 2 drug, subject to a $20 copayment. After the

generic drug's release, however, Plavix was re-characterized as a Tier 3 drug and remained as such. Appellees' characterization of Plavix as a Tier 3 drug serves the basis of Appellants' allegations: Appellants maintain that Plavix should have been returned to Tier 2 after the generic drug was no longer produced and assert that, because it was not, they overpaid for the drug. Therefore, Appellants asserted claims pursuant to § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), arguing that this classification amounted to a denial of benefits due under the terms of their plan.

Faced with Appellees' Rule 12(b)(6) Motion to Dismiss, the District Court dismissed Appellants' ERISA claims with prejudice and companion common-law claims without prejudice.[5] The District Court found that Appellees clearly had discretion under the Plan to determine what copayment would apply to which drugs, and, applying an arbitrary and capricious standard of review, that Appellees' decision to place Plavix in the third tier was not an abuse of discretion. Specifically, the District Court determined that only the "parent contract", the Prescription Drug Rider, and the formulary were plan documents,[6] and thus the Plaintiffs could only enforce the terms included in those documents. *See Saltzman v. Independence Blue Cross*, 634 F. Supp. 2d 538, 556-60

---

[5] Appellants' ERISA claims are the only claims before the Court in the appeal *sub judice*.

[6] The District Court found that, because the plan documents refer to the formulary to determine coverage, the formulary is "essential to the 'operation and administration' of both Plaintiffs' plans." *Saltzman*, 634 F. Supp. at 557-58. The other documents, according to the District Court, "concede on their face a lack of authority and instead rely on the authority of the formulary and other plan documents," and thus were not plan documents. *Id.* at 559.

(E.D. Pa. June 5, 2009).  The District Court thus found that the terms of the plan were unambiguous in granting to IBC the authority to interpret the plan and assign drugs to specific tiers, and that the Appellants had failed to demonstrate that IBC abused its discretion in assigning Plavix to Tier 3.

In support of this appeal, Appellants assert that they sufficiently stated a claim because the Appellees' failure to categorize Plavix as a Tier 2 formulary drug deprived them of the benefit of a lower copayment to which they were entitled.  First, Appellants maintain that the District Court mischaracterized the formulary as a plan document, asserting that it merely reflects the administration of benefit standards.  Further, Appellants assert that, according to the plan documents, the drug formulary must include a sufficient range of medicines for physicians to prescribe all medically necessary drugs and, therefore, Plavix should be considered a Tier 2 drug because of the unavailability of a generic alternative.  Related to the appropriate standard of review, Appellants assert that, even accepting that Appellees had the discretion to determine whether Plavix was a formulary or non-formulary drug, Appellees did not exercise that discretion and thus the District Court's review should have been *de novo*.  Alternatively, Appellants claim that, even if an arbitrary and capricious standard is appropriate, the District Court erred because the exclusion of Plavix from the formulary was arbitrary.  Finally, Appellants maintain that even if Appellees had discretionary authority under the plan and did in fact exercise that discretion, the plans are nonetheless ambiguous, and thus not subject to a

6

final interpretation on a motion to dismiss because of the need for extrinsic evidence to interpret the terms. Essentially, Appellants claim that Appellees breached the plan documents because they did not offer "comprehensive prescription drug coverage" at the "highest level of coverage" with respect to Plavix.

Appellees conversely assert that the District Court properly evaluated Appellants' claims under well-settled ERISA principles, noting that employers are free to amend welfare plans when rights are not vested. Appellees additionally counter that Appellants are attempting to re-write unambiguous plan terms. Appellees maintain that the District Court properly applied an arbitrary and capricious standard of review, and appropriately determined that it was within Appellees' discretion to place Plavix in Tier 3.

II.

The Court's review of the District Court's dismissal of the Amended Complaint in this action is plenary and "we apply the same standard that the District Court should have applied." *Shuman v. Penn Manor Sch. Dist.*, 422 F.3d 141, 146 (3d Cir. 2005) (quoting *Abramson v. Williams Paterson Coll. of N.J.*, 260 F.3d 265, 276 (3d Cir. 2001)). A district court should review a decision to deny a claim for benefits under ERISA using one of the following two standards: (1) *de novo*; or (2) arbitrary and capricious. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) ("*Firestone*"). A district court should conduct a *de novo* review of benefits challenged under 29 U.S.C. § 1132(a) unless the benefit-plan at issue gives the plan administrator the discretionary authority to

7

determine eligibility for benefits or to construe the terms of the plan. If the administrator has such discretion, a district court applies an arbitrary and capricious standard of review. *See Gritzer v. CBS, Inc.*, 275 F.3d 291. 295 (3d Cir. 2002) (citing *Firestone*, 489 U .S. at 115). In considering a motion to dismiss, a district court should "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (construing a Rule 12(b)(6) standard after the decision of the United States Supreme Court in *Bell Atl. v. Twombly*, 550 U.S. 544 (2007)). *See also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (holding that the pleading standard articulated is applicable to all civil actions).

### III.

An action may be brought pursuant to § 502(a)(1)(B) of ERISA by a beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Thus, to assert an action to recover benefits under ERISA, a plaintiff must demonstrate that "he or she [has] a right to benefits that is legally enforceable against the plan." *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 574 (3d Cir. 2006). These benefits are due when they become vested. *Id.*

ERISA does not set out the standard of review for actions brought under 29 U.S.C.

§ 1132(a)(1)(B). In *Firestone Tire & Rubber Co. v. Bruch*, the Supreme Court held that, when analyzing a challenge to a denial of benefits in these actions, a court must review the plan administrator's decision under a *de novo* standard of review unless the plan grants discretionary authority to the administrator to determine eligibility for benefits or interpret terms under the plan. 489 U.S. 101, 109 (1989). If the administrator has such discretionary authority, the "administrator's interpretation of the plan 'will not be disturbed if reasonable.'" *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 437 (3d Cir. 1997) (quoting *Firestone*, 489 U.S. at 111)). Based on the foregoing, a court reviews an administrator's decision or denial under an arbitrary and capricious standard of review. *See Ford. v. Unum Life Ins. Co. of Am.*, 351 Fed. Appx. 703, 707 (3d Cir. Nov. 9, 2009) (not-precedential opinion) (citing *Abnathya v. Hoffman LaRoche, Inc.*, 2 F.3d 40 (3d Cir. 1993)); *see also Keating v. Whitmore Mfg. Co.*, 186 F.3d 418, 420-21 (3d Cir. 1999) ("Our standard of review is abuse of discretion because the plan gives broad discretion to the Committee to determine benefits. Therefore, we must affirm unless we find the Committee's decision to be arbitrary and capricious."). "Under the arbitrary and capricious standard, 'the district court may overturn a decision of the plan administrator only if it is without reason, unsupported by the evidence, or erroneous as a matter of law.'" *Mitchell*, 113 F.3d at 439 (quoting *Abnathya*, 2 F.3d at 45). As this review is deferential to the plan administrator, the district court must not substitute its own judgment for the judgment of the administrator. *See id.*

9

However, to determine which standard of review should apply to an administrator's decision, a court must first determine which documents are part of the governing plan, and then decide whether the terms of the governing plan document are ambiguous. "If the terms are unambiguous, then any actions taken by the plan administrator inconsistent with the terms of the document are arbitrary. But actions reasonably consistent with unambiguous plan language are not arbitrary." *Bill Gray Enters., Inc. Employee Health and Welfare Plan v. Gourley*, 248 F.3d 206, 218 (3d Cir. 2001). If the terms of the plan are clear then the court need not look to other evidence; however, if there are two or more reasonable interpretations of the terms, a court may consider extrinsic evidence to resolve any ambiguities.

The requirement of a written instrument under ERISA ensures that "every employee may, on examining plan documents, determine exactly what his rights and obligations are under the Plan." *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995). Therefore, a party may only enforce the terms that are included in a plan document. As noted by the Eleventh Circuit, § 502(a)(1)(B) of ERISA "clearly contemplates" documents other than the plan description and contract, here the "parent contract" and Drug Rider, that are part of, and control the operation of, a welfare plan. *See Heffner v. Blue Cross and Blue Shield of Ala.*, 443 F.3d 1330, 1341 (11th Cir. 2006). The District Court relied on, and we are persuaded by, an opinion by the Eleventh Circuit, noting that documents are part of a coverage plan if they:

10

(1) provide a procedure for establishing and carrying out a funding policy, (2) describe . . . the operation and administration of the plan, (3) provide a procedure for amending the plan or for identifying the persons who have authority to amend the plan, (4) specify the basis on which payments are made to and from the plan, [or (5)] other instruments under which the plan was established or is operated.

*Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1274 n. 8 (11th Cir. 2005) (quoting 29 U.S.C. § 1102(b) and 29 U.S.C. § 1024(b)(2)) (internal quotations omitted). Simply put, plan documents are those documents that are summary plan descriptions or that govern the administration, management, or amendment of the plan.

Contrary to the assertions found in the Amended Complaint in this matter,[7] Appellants now characterize the formulary under which each of their plans was controlled as a "partial listing of prescription drugs available [that] is nothing more than a projection of future benefits." (Appellants' Br. 19). Appellants thus assert that the formulary is not the kind of document that qualifies as a plan document under ERISA. Appellees respond that the formulary is an integral plan document because it defines the benefits under the plan, describes the plan's operation, and specifies the basis on which benefits are paid. (Appellees' Br. 29). In support of their argument, Appellees highlight that a participant must follow a sequential approach to determine their benefits:

(a) [F]irst, the Schedule of Benefits describes the benefits provided for "Covered Drugs or Supplies . . . without charge except for the Drug Co-pay .

---

[7]"IBC describes the coverage structure for the prescription drug benefits in the Independence Blue Cross Select Drug Program Formulary. . . . The Formulary is incorporated into and made part of both the Keystone and Personal Choice IBC Contracts." (Am. Compl. ¶¶ 71, 73).

11

. . ." [Joint Appx. 568a] . . .; (b) second, the Plan's exclusions must be consulted, [Joint Appx. 570-71a]; (c) next, the Schedule of Copayments and Limitations (which identifies the $10, $20 or $35 co-payments for generic, brand name formulary and non-formulary drugs) must be considered, [Joint Appx. 572a and 853a]; and (d) finally, to determine the applicable co-pay, participants must review the formulary list for a drug's classification as generic, brand name formulary or non-formulary.

(Appellees' Br. 30).

Based upon a review of the record, we find that the formulary is a plan document, and thus the terms of the formulary would govern the plan. The formulary is essential to the administration of the plan, as it categorizes specific drugs into the tier-system established in the plans. Indeed, the Prescription Drug Rider regularly references the formulary and directs participants to consult it to determine their benefits. Participants, therefore, must refer to the listings found in the formulary to determine the copayments associated with each. As such, the formulary describes the operation of the plan, specifies the basis upon which payments are made, and puts the plan participants on notice as to the scope of their benefits and is essential to a participant's understanding of what copayment he or she will be required to pay for certain drugs. *See Cotton*, 402 F.3d at 1274 n. 8. Therefore, because the formulary is part of the plan, its terms will be controlling for the purposes of ERISA.[8]

---

[8]The other documents Appellants offered, as the District Court noted, "concede on their face a lack of authority and instead rely on the authority of the formulary." *Saltzman v. Independence Blue Cross*, 634 F. Supp. 2d 538, 559. First, the letter template is, in fact, merely a guide that refers to the formulary as the controlling document. Similar to the letter template, the webpage also refers to and relies on the authority of the formulary. Finally, the newsletter clearly

Because the formulary is part of the plan documents, we must consider it in conjunction with the Appellants' "parent contracts" and Prescription Drug Riders to evaluate whether the terms are ambiguous and to interpret the terms of the plan. There is no dispute that the plans at issue are employee welfare benefit plans under ERISA. As benefits under welfare plans are, typically, nonvested, "[e]mployers or other plan sponsors are generally free under ERISA, for any reason and at any time, to adopt, modify, or terminate welfare plans." *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 574 (3d Cir. 2006). Nonetheless, if the relevant benefit has vested, an employer or plan administrator may not deny the benefit by plan amendment. *See id.* A "plan participant bears the burden of proving . . . that the employer intended the welfare benefits to be vested." *In re Unisys Corp. Retiree Medical Benefit "ERISA" Litig.*, 58 F.3d 896, 902 (3d Cir. 1995). We apply the rules of construction of contracts to ERISA plans: the plan must be considered as a whole; straightforward, unambiguous language should be given its natural meaning; and, if a specific provision found in the plan conflicts with a general provision, the specific provision should control. *See Aramony v. United Way of America*, 254 F.3d 403, 413 (2d Cir. 2001) (quoting Restatement (Second) of Contracts § 203(c)) (applying this rule of construction to interpret terms of an ERISA pension plan); *see also Petroleos Mexicanos Refinacion v. M/T King A*, 554 F.3d 99, 113 (3d Cir. 2009) ("[T]he more specific term should usually be held to prevail over the more general term." 5

states that it is not a statement of benefits and, thus, does not qualify as a plan document.

Corbin on Contracts § 24.23 (2007)).

Appellants assert that the plan administrator's interpretation of the plan, placing Plavix in Tier 3, is inconsistent with the plain language of the plan. Appellants argue that the formulary list *must* contain Plavix to "meet the standard of 'intended to include a sufficient range of medicines to enable Physicians . . . to prescribe all Medically Appropriate/Medically Necessary treatment of a Covered Person's condition.'" (Appellants' Br. 26). Appellants claim that requiring the highest copayment for Plavix renders the "medically necessary" language unnecessary. Further, Appellants assert that the characterization of Plavix in the formulary directly conflicts, and thus renders meaningless, language found elsewhere intimating that the plan "is based on an incentive formulary." (*See* Joint Appx. 1032a, 1034a-1035a). Appellants note that an incentive formulary is intended to encourage participants to choose a generic version of a drug, and assert that, because no generic was available for Plavix, its placement in Tier 3 violated the plans.

Appellees, on the other hand, assert that the plan documents did not give either Appellant a vested right to any particular incentive in the formulary, and thus the administrator was free to characterize Plavix as a non-formulary brand name drug. Further, Appellees argue that Appellants ignore the plain meaning of the terms of the formulary, as the formulary unambiguously sets Plavix at a certain copayment and notes that the administrator has the discretion to change the formulary. Regarding Appellants'

14

contentions regarding the "medically necessary" prefatory language, Appellees first note that this is a general provision over which the specific language found in the formulary would take precedence. Also, Appellees note that Plavix's placement in Tier 3 does not conflict with this language, at any rate, because participants still have access to medically necessary medication: although Plavix is in Tier 3, it is available and, moreover, a combination of other medications contained in Tiers 1 or 2 could be prescribed to address a participant's unique medical condition. As such, Appellees maintain that the copayment assigned to Plavix did not amount to a denial of benefits because participants not only had access to other medications at lower copayments but also had access to Plavix itself. Finally, Appellees note that "ERISA neither requires employers to establish employee benefit plans [n]or mandate[s] what kind of benefit employers must provide if they choose to have such a plan'" (Appellees' Br. 38-39 (quoting *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996)), and that the decision regarding what copayment to apply to Plavix was a decision that was not governed by ERISA.

We find that the terms of the plan are unambiguous with respect to Appellants' prescription drug coverage and relevant copayment amounts. As the District Court noted, it is clear that, "while IBC is required to provide prescription drug benefits for both Plaintiffs, Plaintiffs are required to contribute to the cost of the prescription drug purchase with a copay." *Saltzman*, 634 F. Supp. 2d at 562. It is also clear that the copayments for each drug are set by the formulary. Saltzman's contract states that: "Prescription Drugs

15

contained in the Drug Formulary will be Prescribed and dispensed whenever appropriate . . . Covered Drugs not listed in the drug Formulary shall be subject to the Non-Formulary Drug Copay . . . the coverage may exclude, or require, the Member to pay higher Co-payments for certain Prescription Drugs." *Id.* at 563. Further, Saltzman's plan notes that "Covered Drugs not listed in the Drug Formulary shall be subject to the Non-Formulary Drug Copay", or $35 as established. *Id.* Meister's copayment requirement and copayment amounts are established in the Prescription Drug Rider.

In addition to clearly setting the requirements for copayments by participants, Appellants' plans also unambiguously grant to IBC the discretion to interpret and amend the terms of the plan, including the terms found in the formulary. Appellees' authority to amend the terms of the plan is repeated, in express terms, throughout the plan documents. Saltzman's Prescription Drug Rider defines the formulary as "a listing of Prescription Drugs preferred for use by the HMO," and notes that "[the] list shall be subject to periodic review and modification by the HMO." *Id.* at 564. Meister's formulary itself notes that "[b]ecause prescription drug programs vary by group, the inclusion of a drug in this formulary does not imply coverage. This formulary was current at the time of printing and is subject to change." *Id.* at 564-65. Based on the foregoing, while it is clear that Appellants had a right to prescription coverage based upon the terms of the plan, Appellants did not have a vested right as to the amount of the copayments. Indeed and to the contrary, the plan documents unambiguously grant to the administrator the discretion

16

to select the terms of the plan, including the placement of drugs in the formulary.

Because Appellees retained discretion to set the terms of the plan, we must analyze their decision under an arbitrary and capricious standard of review. *See Firestone*, 489 U.S. 101, 115 (1989) ("[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator . . . discretionary authority to determine eligibility for benefits or to construe the terms of the plan."); *see also Keating v.Whitmore Mfg. Co.*, 186 F.3d 418, 420-21 (3d Cir. 1999) ("Our standard of review is abuse of discretion because the plan gives broad discretion to the Committee to determine benefits. Therefore, we must affirm unless we find the Committee's decision to be arbitrary and capricious."); *Moench v. Robertson*, 62 F.3d 553, 566 (3d Cir. 1995) ("Where discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court, except to prevent abuse by the trustee of his discretion."). We conclude that Appellees had the authority to determine benefits, and the decision to categorize Plavix as a non-formulary drug was an exercise of discretion, as it construed the terms of the plan. We conclude that Appellees' construction does not elsewhere conflict with the unambiguous terms of the plan and, therefore, is not arbitrary.[9] *See Bill Gray Enters., Inc.,* 248 F.3d at 218 ("[A]ctions reasonably consistent with unambiguous plan language are not arbitrary.").

---

[9]We likewise note that Appellees' decision to include Plavix in Tier 3 was an exercise of discretion under the plan.

17

Despite Appellants' arguments, they have not produced evidence to suggest that they had a vested right in Plavix's placement in Tier 2. Further, we believe that the prefatory language in the formulary, which provides that IBC will provide participants with "comprehensive prescription drug coverage", does not conflict with the formulary's placement of Plavix as a non-formulary, brand-name drug because the specific provisions of the formulary are controlling over the general purpose statement. Finally, with respect to the incentive-driven system of the copayments, we similarly find that the highly specific provisions placing Plavix in Tier 3 are controlling over the more general statements regarding the incentive-drive nature of the plan. Because the unambiguous terms of the formulary do not conflict with other provisions and because Appellants have failed to demonstrate that Appellees' placement of Plavix in Tier 3 is "without reason, unsupported by the evidence, or erroneous as a matter of law", we conclude that Appellees' decision was neither arbitrary nor capricious. Therefore, Appellants have failed to state an ERISA claim upon which relief can be granted.

*     *     *     *     *

Based on the foregoing, we will affirm the judgment of the District Court.